NEW/ Mar 90

## LOT RENTAL AGREEMENT
## FOR
## PARK PLACE

THIS LOT RENTAL AGREEMENT, made and entered into on this **17TH** day of **NOVEMBER 2015** by and between PARK PLACE COMMUNITY, LLC, a Delaware limited liability company d/b/a PARK PLACE, hereinafter referred to as LANDLORD, and **GEORGE E KATHLEEN RHEDEL**, hereinafter referred to as TENANT(S).

WITNESSETH: That in consideration of the lot rental amount, covenants and agreements to be kept and performed by Tenant hereunder, Landlord demises to Tenant and Tenant leases from Landlord the premises, as hereinafter defined, subject to the terms and conditions as hereinafter set forth.

1. It is specifically understood and agreed by and between the parties hereto that this is a bona fide offer to lease for a specified term. The prospectus (and its exhibits) for PARK PLACE with an identification number of **PRMZ000998-P2**, and an approval date of **June 2, 2011**, is incorporated herein by reference.

2. Landlord hereby leases to Tenant for installation thereon of Tenant's mobile home as a private residence that certain property ("the Premises") described as:

   STREET ADDRESS: **1993 E. LAKEVIEW DR**
   LOT #:: **1993**

to be occupied solely as a private dwelling by Tenant and Tenant's family members, consisting of **(2)** person(s). In no event shall the total number of occupants exceed that permitted by this Agreement, Rules and Regulations of the Park, or applicable laws.

All Tenants must meet the age requirements in accordance with the Park Rules and Regulations. Any Resident who violates this rule will be subject to eviction pursuant to Section 723.061, Florida Statutes.

3. The term of this lot rental agreement shall be for a period of **1** months, **15** days, commencing on the **17TH** day of **NOVEMBER**, **2015** and terminating on the **31ST** day of **DEC. 2015**. This Agreement is automatically renewable each year, except that either the Landlord or Tenant can terminate this agreement, upon written notice at least ninety (90) days prior to the expiration of the annual rental term, which date is December 31 of each year.

All payments are to be made to the Landlord on or before the fifth day of each and every month in advance, without demand, at the park office. If any monthly installment due hereunder is not paid within five (5) days from due date a late charge of five (5%) of the base rent shall be paid by Tenants to Landlord. All charges of collection of any installment, including attorney's fees and

1

x _hcR_   x _K'2F_

Case #: 2:17-cv-14056-RLR

Defendant Exhibit 3

costs, in addition to said late charge, shall be paid by Tenant to Landlord. All rental payments are payable to: Park Place.

4. **Tenant's Financial Obligations.** Upon expiration, Landlord may increase the lot rental amount upon ninety (90) days written notice and pursuant to the terms of Section 723.037, Florida Statutes.

<u>Lot Rental Amount</u>

A. Base Rent

1. The base rent for your lot is $ 757.00 per month.* *Current rate paid plus any increase in 20\_.

2. A security deposit of $ N/A shall be paid upon application for tenancy but in any event prior to occupancy.

3. Storm drainage, lawn cutting, and waste disposal are included in the base rent as disclosed in the prospectus.

4. Water, sewage disposal, electricity, cable television, telephone service, garbage disposal (landfill fee), and other lawn maintenance are not included in the base rent as disclosed in the prospectus.

B. <u>Special Use Fees</u>

Special use fees that individual mobile home owners, residents, or applicants are presently responsible for:

1. <u>Entrance Fee</u> - $ N/A, for the placement of a new mobile home in the Park.

2. <u>Late Charge</u> - $ 5%*, if any portion of the lot rental amount is not paid by the 5th of the month, and $ N/A for each additional day the lot rental amount is past due. *of base rent

3. <u>Returned Check Charge</u> - $ 30.00.

4. <u>Guest Fee</u> - $ 60.00 per month per person. This fee will be assessed only if your guest's visit exceeds thirty (30) days, per year, or fifteen (15) days consecutively.

5. <u>Lawn Maintenance</u> - $ 50.00 per month on an annual basis or $ 30.00 per hour charge, plus materials, with a minimum of one hour, for mowing and trimming shrubs, edging, watering or fertilizing, on each occasion that the Park is required to maintain an owner's lot when the mobile home owner or tenant fails to properly maintain same, after three (3) days written notice. This fee will be assessed in accordance with and as described in the Rules and Regulations attached hereto.

2    x_/s/_    x_/s/_

6. <u>Lot Maintenance</u> -- $ 50.00 per service, plus costs.

C. <u>Government and Utility Charges</u>

The mobile home owner will be responsible for payment of those costs charged to the Park owner by state or local government or utility companies. Section 723.031(5)(c), Florida Statutes (1986). Certain government and utility charges may be assessed more often than annually and will be assessed to the mobile home owner on a pro rata basis. The pro rata share will be determined by dividing the number of mobile home spaces leased by a resident by the total number of occupied mobile home spaces in the Park. However, the Park Owner reserves the right to recoup those costs in the form of future rent increases.

Please be advised, that the Park Owner will pass-through to the homeowner the impact fees for the transfer of the water and wastewater utility system as disclosed in Section VII of the prospectus. The impact fee will be assessed and collected by the Park Owner at the time of the sale of your mobile home. The prospective purchaser should be advised of this charge. Please also be advised that the current amount of the impact fee imposed by the County for hookup to their utility system is disclosed below, however, this fee may be increased by the County at their sole discretion. The full amount of the impact fee will be due to the Park Owner at the time of sale.

Current impact fee by Indian River County $ __PAID__.

D. <u>Pass-through Charge's</u>

The mobile home owners will, be responsible for payment of pass-through charges. The definition of pass-through charges is set forth in the prospectus in the section prescribing the manner of lot rental amount increases. The charges may be assessed more often than annually and will be assessed to the mobile home owner on a pro rata basis, in accordance with Section 723.003 (9), Florida Statutes (1986). The pro rata share will be determined by dividing the number of mobile home spaces leased by a resident by the total number of leased mobile home spaces in the Park. Those items defined herein as pass-through charges may be passed on to the resident more often than annually, however, the Park Owner reserves the right to recoup pass-through charges in the form of future lot rental amount increases or other charges rather than as pass-throughs.

E. <u>Pass-on Charges</u>

The mobile home owners will be responsible for payment of pass-on charges. The definition of pass-on charges is set forth in the prospectus in the section prescribing the manner of lot rental amount increases. The charges may be assessed more often than annually and will be assessed to the mobile home owner on a pro rata basis. The pro rata share will be determined by dividing the number of mobile home spaces leased by a resident by the total number of leased mobile home spaces in the Park. Those items defined herein as pass-on charges may be passed on to the resident more often than annually, however, the Park Owner reserves the right to recoup pass-on charges in the form of future lot rental amount increases or other charges rather than as pass-ons. Presently,

3    x _MC_    x _KEF_

there are pass-on charges for garbage disposal (landfill fee), water and wastewater surcharge, and ad valorem property taxes.

The current garbage disposal (landfill fee) is $ N/A

The current water and wastewater surcharge is $ N/A

The current ad valorem property taxes is $ TBD*.   *Tax notices are received in October and January

### F. Assessments

Annual assessments may be imposed in addition to the base rent, based on increased costs to the Park Owner as set forth in the section on increases in lot rental amount in the prospectus. The annual assessment will be imposed for a limited time period; as set forth in the notice of assessment. The notice of annual assessment will be delivered 90 days prior to the effective date of the assessment. To the extent a particular increase in cost is used as a basis for the imposition of an annual assessment, that cost will not be used as a factor for determining increases in lot rental amount for the period during which the assessment is to be imposed.

### G. Generally

The cost of all services not provided by the Park and required by the resident are solely the resident's responsibility.

The dollar amounts set above represent only the amounts charged for each rental category on the Delivery Date. As disclosed in the Prospectus, such amounts are subject to increase.

Whenever "0" appears above a blank for the amount charged for any rental category described above, it means that charges for that rental category are not imposed by the Owner on the Delivery Date. The amount of those charges may be increased as described in the Prospectus.

5. The security deposit held by Landlord for Tenant's faithful performance of this Lot Rental Agreement and against any damage caused to Landlord's property by Tenant, his family and guests. Landlord is not obliged to apply the deposit on rents or other charges in arrears or on damages for Tenant's failure to perform this Lot Rental Agreement. However, Landlord may so apply the security at its option, and its right to possession of the premises or additional damages for nonpayment of lot rental amount or for any other reason shall, not in any, event be affected by reason of the fact that it holds this security. The security deposit, less any damages applied toward payment of arrearage or damages as herein provided, shall be returned to the Tenant within fifteen days when this Lot Rental Agreement is properly terminated, after the Tenant has vacated the premises and delivered possession to Landlord. If Landlord repossesses the premises because of Tenant's default or breach, it may apply all or any portion of the deposit to reduce any damages suffered and may retain the remainder to apply on such damages as may be suffered thereafter by reason of the default or breach. The amount retained shall not constitute liquidated damages, it being agreed that

4

x _(signature)_   x _(signature)_

Landlord's remedies are cumulative and Landlord may pursue such other remedies or damages or legal action as may be required to fully compensate Landlord for the damages incurred. This Lot Rental Agreement is of no effect until Landlord receives said security deposit.

6. In the event of holding over by Tenant subsequent to the expiration or other termination of this Lot Rental Agreement and without regard to Landlord's acquiescence or consent, Tenant shall pay as liquidated damages a monthly rent equal to the monthly base rent payable during the period of the holdover, including any increases. Additionally, during such holding over the Landlord's acquiescence, and without any express agreement of the parties, the Tenant shall be considered a Tenant at sufferance which tenancy shall be terminated pursuant to Section 723.061, F.S. There shall be no renewal of this Lot Rental Agreement by operation of the law. This liquidated damages provision in no way vitiates the Landlord's right to recovery for damages to the Park.

7. The services provided by the Park which are included in the base rent are storm drainage, lawn cutting, and waste disposal. Tenant agrees to pay for all water, sewage disposal, gas, light, cable television, heat, electricity, garbage disposal (landfill fee), other lawn maintenance, telephone and all other services except such services as may be hereinafter specifically provided for the Tenant.

8. The Tenant agrees to abide by all Rules and Regulations of the Landlord which are deemed incorporated in this Lot Rental Agreement by reference and agrees that violation thereof shall be grounds for eviction from the park. The parties hereto agree that said Rules and Regulations as from time to time amended are covenants and provisions of this Lot Rental Agreement and are reasonable and necessary for the proper and efficient operation of the park and for the health, safety and welfare of the residents of the park.

9. RESALE OF MOBILE HOMES - See Rules and Regulations.

10. EVICTION - See Rules and Regulations.

11. If Tenant shall fail to pay lot rental amount or any other charge or assessment specified herein at the time and manner stated, or fail to keep and perform any of the other conditions or agreements of this Lot Rental Agreement, including compliance with the park's current Rules and Regulations, Landlord may, at its option, terminate this Lot Rental Agreement and all rights of the Tenant hereunder upon written notice from Landlord. If the Tenant fails to voluntarily vacate the premises after termination, Landlord may bring an action for possession in the appropriate court and Tenant agrees to pay all costs, expenses and reasonable attorneys fees which shall be incurred or expended by Landlord.

12. If the Tenant's mobile home or any part thereof shall at any time be destroyed or so damaged by fire or other elements as to be unfit for occupancy or use by the Tenant, and the Tenant fails or is unable to make said premises or said home fit for occupancy or use within thirty (30) days thereafter, the Landlord shall consider the Lot Rental Agreement to be abandoned and the Tenant will be obligated to remove the derelict from the pad.

5    x /s/ BCF    x /s/ KEF

13. Tenant agrees that all personal property brought into the park shall be at the risk of the Tenant only and that the Landlord shall not be liable for theft thereof or any damage thereto occasioned from any acts of co-tenants, or other occupants of said park or any other person.

14. Tenant agrees, at its own expense, to promptly comply with all requirements of any legally constituted public authority made necessary by reason of Tenant's occupancy of said park.

15. Tenant agrees that this Lot Rental Agreement shall be subject and subordinate to any loan deed or loan deeds and/or mortgages now on said park and to all advances already made, or which may be hereafter made, on account of said loan deeds and/or mortgages to the full extent of all debts and charges secured thereby and to any renewals or extensions of any part thereof and to any loan deeds and/or mortgages which the owner of said park may hereafter, at any time, elect to place on said park, and Tenant agrees upon request to hereafter execute any paper or papers which the Counsel for Landlord may deem necessary to accomplish that end and, in default of Tenant so doing, that Landlord is hereby empowered to execute such paper or papers in the name of the Tenant, and as the act and deed of the Tenant, and this authority is hereby declared to be coupled with an interest and not revocable. In the event of a foreclosure pursuant to any such loan deed and/or mortgages, Tenant agrees to attorn to the purchaser pursuant to any foreclosure sales; and, at the option of such purchaser Tenant shall thereafter remain bound pursuant to the terms of this Lot Rental Agreement as if a new and identical Lot Rental Agreement between such purchaser, as Landlord, and Tenant, had been entered into for the remainder of the term thereof.

16. Time is of the essence of this agreement.

17. Landlord's address for receipt of notices is set forth in the Prospectus.

Any notice by Landlord to Tenant shall be mailed or delivered to Tenant at Tenant's address or last known address and by Certified Mail, Return Receipt Requested when required by Florida Statute.

18. The rights of Landlord contained herein are cumulative, and failure of Landlord to exercise any right shall not operate to forfeit any other rights of Landlord. No waiver by Landlord or any condition or covenant shall be deemed to constitute or imply a further waiver of any other conditions or covenants.

19. Tenant may not sublet the demised premises or rent his mobile home without the express written approval of the Landlord. Approval shall not be unreasonably withheld. Further, this agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto, except as provided herein. Residents who sell their mobile homes cannot guarantee prospective purchasers a site in the park. Tenant shall provide Landlord with written notice of Tenant's intent to sell his home. A prospective purchaser shall be required to submit an application prior to purchasing a mobile home in the Park. All new residents must meet the age requirements and standards of the Park, and will be screened thoroughly. Approved purchasers will be allowed to assume the remainder of the annual rental term, until December 31, as provided herein.

6

x  _BCF_    x  _KEF_