UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-14394-ROSENBERG/MAYNARD

GEORGE FRIEDEL &
KATHERINE FRIEDEL,

            Plaintiffs,

v.

SUN COMMUNITIES, INC.,
            Defendant.
_____/

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

COME NOW Plaintiffs GEORGE FRIEDEL AND KATHLEEN FRIEDEL ("FRIEDELS" and/or "PLAINTIFFS"), by and through their undersigned counsel, and sue the Defendants, SUN COMMUNITIES, INC. ("SUN COMMUNITIES") and PARK PLACE COMMUNITY, L.L.C. ("PARK PLACE") (collectively "DEFENDANTS"), and state as follows:

**NATURE OF THE ACTION**

1.      This is a civil action brought pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.*, 42 U.S.C. § 1982, for damages and injuries stemming from SUN COMMUNITIES INC. and PARK PLACE violations of the FHA by making KATHLEEN FREIDEL and GEORGE FRIEDEL's dwelling unavailable on account GEORGE FRIEDEL's disabilities and refusing by refusing to make reasonable accommodations to the condo association's rules, policies, practices, or services, when such an accommodation was necessary to afford GEORGE FRIEDEL's an equal opportunity to use and enjoy his dwelling.

**JURISDICTION AND VENUE**

2.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, and 42 U.S.C. §§ 3601, *et seq.,* and § 3613, because this lawsuit is brought under the Fair Housing Act,

1

42 U.S.C. § 3601 et seq. Further, this Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

3.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the Southern District of Florida, Fort Pierce Division, under 28 U.S.C. §1391(b) because the events giving rise to the PLAINTIFFS' claims arose in this District.

## PARTIES

5.      Plaintiff GEORGE FRIEDEL, an Indian River County resident, is an 81-year old man that suffers from and has a history of suffering from severe depression and a serious heart condition.

6.      Plaintiff KATHLEEN FRIEDEL is an Indian River County resident and is married to GEORGE FRIEDEL.

7.      Defendant SUN COMMUNITIES is a Foreign Limited Liability Corporation which owns, operates, controls, directs, and administers PARK PLACE, the manufactured home community where the FRIEDELS resided before their eviction in October of 2017.

8.      PARK PLACE is registered as a Foreign Limited Liability Company which operates the manufactured home community where the FRIEDELS resided before they were ordered to vacate their home in October of 2017.

9.      The lots leased to residents of PARK PLACE, including the one previously leased by the FRIEDELs, are "dwelling[s]" within the meaning of the FHA, 42 U.S.C. § 3602(b), and are subject to the anti-discrimination provisions of the FHA.

## BACKGROUND

10.      GEORGE FRIEDEL suffers and has a history from suffering from several chronic physical and mental impairments, including heart failure and coronary atherosclerosis. GEORGE

2

FRIEDEL also suffers from and has a history of suffering from major depressive disorder. GEORGE FRIEDEL's disabilities substantially limit one or more of his major life activities, including cognition, maintaining interpersonal relationships and self-care. Accordingly, GEORGE FRIEDEL has a "handicap" pursuant to the FHA, 42 U.S.C. § 3602(h).

11.     KATHLEEN FRIEDEL is married to GEORGE FRIEDEL and is therefore associated with a person with a handicap pursuant to the FHA, 42 U.S.C. § 3604 (f)(1)(c).

12.     The FRIEDELS owned the home on a lot they leased in the PARK PLACE Community.

13.     In order to have equal use and enjoyment of his home in PARK PLACE, it was imperative that GEORGE FRIEDEL had the ability to live with his dog "Maggie" as an emotional support animal ("ESA").

14.     Maggie was an 11year-old Golden Retriever that provided GEORGE FRIEDEL emotional support, affection, and unconditional love that ameliorated the symptoms of his disabilities, particularly his depression.

15.     On January 20, 2016, Maggie pushed open a screen door and bit another dog at PARK PLACE.

16.     Soon after, fearing possible back lash from PARK PLACE, GEORGE FRIEDEL drove Maggie to his stepson's home in New Jersey and left his emotional support animal in the temporary custody of his stepson until the PLAINTIFFS decided how best to handle the situation.

17.     On January 28, 2016, PLAINTIFFS were served a notice of violation created by SUN COMMUNITIES and at SUN COMMUNITIES's direction commanding that Maggie be removed from PARK PLACE.

18.     The symptoms of GEORGE FREIDEL's depression immediately worsened after

3

Maggie was no longer living with PLAINTIFFS. GEORGE FREIDEL became lethargic, was irritable with his wife, lost interest in doing things that he previously enjoyed, had trouble sleeping and focusing, had crying spells and even had trouble getting out of bed. When he did get out of bed he spent hours and hours alone in his study.

19.     On April 1, 2016, GEORGE FRIEDEL retrieved Maggie from New Jersey and she lived for eight months in the PARK PLACE community without the knowledge of PARK PLACE management until early January of 2017, when a neighbor spotted Maggie and tattled to PARK PLACE's then manager, Patty Jamar.

20.     The symptoms of GEORGE FRIEDEL's depression significantly lessened after Maggie was again living with Plaintiffs, and his level of functioning improved.

21.     On or about January 9, 2017, PARK PLACE, at SUN COMMUNITIES' direction, again commanded that Maggie be removed from the community and threatened that the PLAINTIFFS would otherwise be evicted from the home they owned.

22.     Fearing a return of his debilitating depression if forced to be separated from his emotional support dog again, and having had no success in explaining his need to live with Maggie to PARK PLACE's manager and asking for forbearance, GEORGE FRIEDEL hired counsel to make a formal accommodation request on his behalf.

23.     GEORGE FRIEDEL's counsel requested Maggie be permitted to stay in the community as an accommodation of GEORGE FREIDEL's disability, and provided a supporting letter from GEORGE FREIDEL's physician verifying that GEORGE FREIDEL had a disability-related need to live with his dog Maggie.

24.     Through the FRIEDEL's counsel, the PARK PLACE manager was also provided a January 9, 2017, letter from Sara Blakely, the owner of Dog Kidz Country Daycare & Boarding

LLC, a boarding and doggie day care provider Maggie frequented. The letter attested that Maggie had never shown any signs of aggression and played well with other dogs.

25.     SUN COMMUNITIES had no policy in place at PARK PLACE regarding assistance animals and the PARK PLACE manager told GEORGE FRIEDEL that whether or not Maggie assisted him with a disability was irrelevant.

26.     Neither SUN COMMUNITIES or its PARK PLACE manager ever asked for additional information about GEORGE FRIEDEL's mental or physical health or his disability-related need to live with Maggie.

27.     Neither SUN COMMUNITIES nor its PARK PLACE operation ever made any attempt to explore less drastic options than banishing Maggie, an elderly Golden Retriever critical to GEORGE FREIDEL's ability to manage the symptoms of his depression.

28.     The decision that Maggie could not stay in PARK PLACE was made by SUN COMMUNITIES.

29.     The decision that Maggie could not stay in PARK PLACE was implemented by PARK PLACE's manager at SUN COMMUNITIES's direction.

30.     A disability discrimination suit was filed against PARK PLACE on February 19, 2017, in the Federal District Court for the Southern District of Florida, *George Friedel v Park Place Community, LLC*, Case No. 2:17-cv-14056 [hereafter "Friedel I"], alleging that PARK PLACE violated GEORGE FREIDEL's fair housing rights by making his dwelling unavailable on account of his disability[1].

31.     As an affirmative defense, PARK PLACE asserted that GEORGE FREIDEL was lying about his disability "and only visited a doctor for an alleged 'handicap' after his animal

---

[1] At the time the lawsuit was filed neither Plaintiff George Friedel nor his counsel were aware that SUN COMMUNITIES was the entity actually making decisions regarding the requested accommodation.

attacked other animals and was banned from the park."

32.     PARK PLACE also asserted as an affirmative defense that Maggie was so vicious that she was a threat to other residents

33.     Once it was known to PARK PLACE that GEORGE FREIDEL had returned his ESA to his home, PLAINTIFFS no longer hid Maggie and openly began working in the PARK PLACE community with a professional dog trainer to habituate Maggie to small dogs[2].

34.     GEORGE FRIEDEL's ESA had several training sessions over a period of more than seven months, during which Maggie was successfully trained to ignore her former nemesis: small dogs. Maggie's behavior was so effectively modified that she remained calm and non-aggressive even when she encountered small dogs, charging and barking at her aggressively.

35.     In addition to Maggie's behavior modification training, PLAINTIFFS also took other actions to eliminate the contention from anyone, including other PARK PLACE residents and/or SUN COMMUNITIES and its PARK PLACE manager, that Maggie was any sort of risk or threat to other dogs.

36.     Although the latch on the screen door that had allowed Maggie to escape had been repaired almost immediately after the accident on January 20, 2017. Plaintiffs had a gate installed between the living area and kitchen so that Maggie no longer had access to the front door, thereby eliminating any risk that she could slip out the door accidentally.

37.     The Friedels also began walking Maggie only with a head halter.

38.     On August 29, 2017, after both PLAINTIFFS and Maggie's dog trainer attained sustained confidence in Maggie's training such that she reliably ignored yappy small dogs, even when those animals were aggressive towards her, GEORGE FRIEDEL, through counsel

---

[2] Maggie never showed aggression to people even once in her entire life, and only became reactive to small dogs as a result of having been attacked by them repeatedly.

asked that SUN COMMUNITIES waive any rule or policy that would prevent GEORGE FRIEDEL from continuing to live with his assistance animal Maggie at his home within SUN COMMUNITIES's PARK PLACE community in Sebastian, Florida. The August 29, 2017 request for accommodation is marked, attached hereto and incorporated by reference as "Exhibit A."

39.     The second request was addressed directly to SUN COMMUNITIES because discovery in Friedel I revealed that SUN COMMUNITIES and not PARK PLACE was making all decisions regarding GEORGE FRIEDEL's ESA.

40.     DEFENDANTS have been provided copious medical records and declarations from GEORGE FRIEDEL's physicians attesting to GEORGE FRIEDEL'S lengthy history of depression and major heart problems as part of the Friedel I litigation.

41.     DEFENDANTS have also been provided the written report of and a Declaration from the professional dog trainer that supervised Maggie's training, attesting to Maggie's successful behavior modification training and tolerance of the aggressive charges of and provocation by other dogs.

42.     Other than an email from their Attorney Brian Chase indicating felt that he GEORGE FREIDEL was faking his disability, DEFENDANTS did not respond to the second request for accommodation. The Email is marked, attached, and incorporated by reference as "Exhibit B.":

> *I have previously and continue to express concerns re: George Friedel's alleged disability. His allegations do not match his medical records, which is our primary defense in our current litigation. Notwithstanding I am providing a copy of this correspondence to appropriate parties and I will be in touch soon to advise.*

43.     At no time after the second accommodation request was made did DEFENDANTS

request further information regarding GEORGE FRIEDEL's mental health or heart conditions.

44.     At no time after the second accommodation request was made did DEFENDANTS request further information regarding the training that GEORGE FRIEDEL's ESA had received.

45.     At no time did DEFENDANTS request any information regarding the additional mitigation efforts the PLAINTIFFS had taken.

46.     At no time did DEFENDANTS speak with, or even attempt to speak with, the behavior modification trainer that had supervised Maggie's training and evaluated whether Maggie posed (or ever posed) a "direct threat," nor did the DEFENDANTS ask for a demonstration of Maggie's behavior when charged upon or otherwise provoked by an uncontrolled dog.

47.     Despite his promise, DEFENDANTS' counsel was never "in touch," much less "soon," regarding the PLAINTIFFS' second requested accommodation.

48.     After DEFENDANTS were allotted more than adequate time to consider and respond to the second request for accommodation, GEORGE FRIEDEL's counsel sought to amend the operative complaint to include a count for failure to accommodate based upon the constructive denial of GEORGE FRIEDEL's second request for accommodation that had been made on August 27, 2017.

49.     The motion for leave to file an amended complaint was denied

50.     The case proceeded to trial on October 16 and 17, 2017.

51.     At the Friedel I trial GEORGE FREIDEL was not allowed to present any evidence regarding Maggie's training, thereby depriving the jury of the ability to make a fully informed decision as to Maggie's actual, then-current behavior.

52.      The accommodation request that was made after Maggie's successful behavior

modification was not part of the Friedel I trial.

53.        The jury found that 1) PARK PLACE took action that made GEORGE FRIEDEL's home unavailable to him, 2) GEORGE FRIEDEL is disabled within the meaning of the FHA, 3) PARK PLACE would not have taken adverse action against GEORGE FRIEDEL if it were not for his disability related need to live with Maggie; and 4) Maggie ameliorated the symptoms of GEORGE FREIDEL's disability The Jury Verdict Form is marked, attached, and incorporated herein as "EXHIBIT C."

54.        Doubtless because of the exclusion of evidence of Maggie's successful training, coupled with highly prejudicial evidence regarding one isolated training session that had taken place almost two years before the trial, the jury found for PARK PLACE on its affirmative defense that Maggie was a "direct threat" to the community.[3]

55.        As all evidence and information regarding Maggie's behavior modification training and the second accommodation request were excluded from the Friedel I lawsuit, none of it can be said to have been any part of those proceedings.

56.        Not satisfied with having narrowly avoided liability for housing discrimination against a man just found by a jury to be both disabled and assisted by his emotional support animal, on October 18, 2017, **the day after the trial concluded**, DEFENDANTS served GEORGE and KATHLEEN FRIEDEL with a "STATUTORY THIRTY (30) DAY NOTICE TO VACATE." The NOTICE TO VACATE is marked, attached hereto and incorporated by reference as "Exhibit D."

57.        The direct threat provision of the Fair Housing Act requires the existence of a

---

[3] On appeal, the Eleventh Circuit Court of Appeals affirmed the trial court's exclusion of evidence regarding Maggie's training as well as the denial of the motion to amend the complaint that George Friedel's counsel allegedly "not made in good faith."

significant risk — not a remote or speculative risk. In considering GEORGE FREIDEL's second request for accommodation made on August 29, 2017, SUN COMMUNITIES was required to take into account Maggie's modified behavior and all of the PLAINTIFFS' mitigative measures. Pursuant to 24 CFR Part 5:

> The determination of whether an assistance animal poses a direct threat must rely on an individualized assessment that is based on objective evidence about the specific animal in question, such as the animal's current conduct or a recent history of overt acts.
>
> The assessment must consider the nature, duration, and severity of the risk of injury; the probability that the potential injury will actually occur; and whether reasonable modifications of rules, policies, practices, procedures, or services will reduce the risk. In evaluating a recent history of overt acts, a provider must take into account whether the assistance animal's owner has taken any action that has reduced or eliminated the risk. Examples would include obtaining specific training, medication, or equipment for the animal.

58.     As of October 18, 2017, Maggie had received more than nine months of professional training and had not demonstrated any recent conduct indicating the geriatric dog posed a direct (or any) threat to other residents or their property.

59.     As of October 18, 2017, DEFENDANTS had received no complaints regarding Maggie in almost two years, save for the neighbor that "tattled" that she had seen Maggie with GEORGE FRIEDEL in the community.

60.     It is this October 18, 2017 NOTICE TO VACATE and SUN COMMUNITIES' refusal to accommodate GEORGE FRIEDEL's well documented disability-related need to live with Maggie for emotional support that are the basis of this lawsuit, and not conduct that occurred prior to the  Friedel I Lawsuit filed on February 19, 2017 and that was excluded from Friedel I based upon the Court's denial of Plaintiff's motion for leave to amend his complaint.

10

61.        DEFENDANTS were aware of the professional training Maggie had received.

62.        DEFENDANTS, through Attorney Brian Chase who was counsel of record for PARK PLACE in the Friedel I and who is counsel of record for SUN COMMUNITIES in the lawsuit *sub judice,* deposed Maggie's behavior modification trainer, Cecelia Sumner ("Trainer Sumner"), and had been provided the report, Declaration, and video from Trainer Sumner verifying Maggie's successful behavior modification training.

63.        SUN COMMUNITIES was aware of other measures taken by the FRIEDELS to ensure that Maggie did not pose a threat to other resident's dogs, specifically the repair of the screen door, installation of the gate that would prevent Maggie from pushing out the front door and the use of the head collar to walk Maggie.

64.        SUN COMMUNITIES has an unwritten policy that any dog involved in an altercation with another dog must be removed from any SUN COMMUNITIES' property, irrespective of the fact that such dog is an assistance animal that provides disability-related support, and even if the dog's owner has taken corrective measures.

65.        The FRIEDELS required a modification of the unwritten policy that any dog involved in an altercation with another dog must be removed from any SUN COMMUNITIES property in order for GEORGE FRIEDEL to have an equal opportunity to enjoy his dwelling in PARK PLACE.

66.        SUN COMMUNITIES refused to modify its unwritten policy that any dog involved in an altercation with another dog must be removed from any SUN COMMUNITIES property thus refusing to accommodate GEORGE FRIEDEL's disability.

67.        Before serving the NOTICE TO VACATE on the FRIEDELS, DEFENDANTS failed to make any effort to independently assess whether Maggie currently posed any risk, taking

into account Maggie's professional training, especially coupled with other measures taken by the FRIEDELS.

68.     DEFENDANTS made GEORGE FRIEDEL's dwelling unavailable to him because of his disability.

69.     DEFENDANTS made KATHLEEN FRIEDEL's dwelling unavailable to her on account of her husband's disability.

70.     At all times relevant to this complaint, DEFENDANTS had actual knowledge of GEORGE FRIEDEL'S disabilities and his need to reside with Maggie for emotional support.

71.     DEFENDANTS were provided credible verification of GEORGE FRIEDEL'S disability, but chose to disbelieve the opinions of GEORGE FRIEDEL's multiple physicians and the jury in Friedel I.

72.     GEORGE FRIEDEL has been injured by DEFENDANTS' discriminatory housing practices and therefore GEORGE FRIEDEL is an "aggrieved person" pursuant to the FHA, 42 U.S.C. § 3602(i).

73.     KATHLEEN FRIEDEL has been injured by DEFENDANTS' discriminatory housing practices and therefore KATHLEEN. FRIEDEL is an "aggrieved person" pursuant to the FHA, 42 U.S.C. § 3602(i).

74.     GEORGE FRIEDEL and KATHLEEN FRIEDEL have retained the undersigned to represent them in this cause and have agreed to pay a reasonable fee for their services.


**COUNT I**
**MAKING A DWELLING UNAVAILABLE**
**<u>BECAUSE OF HANDICAP</u>**

75.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 74 as if fully

set forth herein.

76.     Plaintiff GEORGE FRIEDEL required the ability to live with his emotional support
animal, Maggie, in order to have the same opportunity to enjoy his dwelling at PARK PLACE as
any non-disabled resident.

77.     DEFENDANTS, knowing of GEORGE FRIEDEL's disability-related need to live
with Maggie, nonetheless issued a NOTICE TO VACATE to GEORGE FRIEDEL and
KATHLEEN FRIEDEL because of minor incidents with GEORGE FRIEDEL's assistance
animal that occurred more than a year and a half earlier and prior to the dog's months of
professional behavior modification training and successful behavior modification.

78.     The DEFENDANTS' foregoing acts of constitute discrimination in violation of the
FHA, *inter alia* 42 U.S.C. § 3604(f)(1)(A), by making a dwelling unavailable because of a
handicap.

79.     As a direct and proximate result of the DEFENDANTS' actions and inactions, the
FRIEDELS were forced to uproot on short notice, forced to leave a community they loved and
were familiar with and comfortable in, and forced to leave behind a home they loved as well as
friends and family.

80.     DEFENDANTS' actions and inactions humiliated GEORGE FRIEDEL and
KATHLEEN FRIEDEL and caused them severe stress and emotional distress.

81.     The FRIEDELS were forced to abandon their community and move to one for which
they are required to pay more services previously provided to them at PARK PLACE, including
but not limited to lawn care and community maintenance.

82.     GEORGE FRIEDEL and KATHLEEN FRIEDEL no longer have access to the same
amenities they had prior to being served the NOTICE TO VACATE and have otherwise been

deprived of those amenities.

83.     KAITHLEEN FRIEDEL no longer lives within walking distance of several members of her family as she did prior to being served the NOTICE TO VACATE.

84.     The FRIEDELS have incurred moving costs and relocation expenses, including but not limited to inspections fees, packing, an appraisal fee, increased insurance expenses, storage costs, and several month's rent for a lot from which they were evicted.

85.     GEORGE FRIEDEL's heart condition was greatly exacerbated by the stress and emotional turmoil caused by having to leave a home he loved and by having to do so at an accelerated rate, as dictated by SUN COMMUNITIES' giving extreme short notice.

86.     As a result of DEFENDANTS' conduct, the FRIEDELS have suffered damages.

87.     DEFENDANTS' discriminatory conduct and actions were intentional, willful, and taken in blatant disregard for the rights of GEORGE FRIEDEL and KATHLEEN FRIEDEL.

> **WHEREFORE,** PLAINTIFFS GEORGE FRIEDEL and KATHLEEN FRIEDEL demand a judgment against DEFENDANTS SUN COMMUNITIES and PARK PLACE declaring that DEFENDANTS' actions and conduct violated the FHA by discriminating against a person with disabilities and a person associated with a disabled person, and awarding PLAINTIFFS compensatory and punitive damages, and their attorney's fees and costs, as well as any other such relief as this Court deems just and equitable.

## COUNT II
## <u>FAILURE TO REASONABLY ACCOMMODATE</u>

88.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 74 as if fully set forth herein.

89.     GEORGE FRIEDEL suffers from and has a history of suffering from severe depression and a serious heart condition that substantially limits one or more of his major life activities.

90.     GEORGE FRIEDEL required the ability to live with his emotional support animal, Maggie, in order to have the same opportunity to enjoy his dwelling at PARK PLACE as any other non-disabled resident.

91.     The FRIEDELS required waiver of any rule or policy that prevented them from remaining in their home in the PARK PLACE community with Maggie.

92.     The DEFENDANTS' failed to substantively consideration and evaluate the PLAINTIFFS' second request for accommodation or engage in good faith dialogue with Plaintiffs or their counsel regarding same.

93.     DEFENDANTS had actual knowledge of GEORGE FRIEDEL's disability and his need for an accommodation.

94.     GEORGE FRIEDEL provided reliable third-party verification of his disabilities and history of disabilities from his current and former physicians.

95.     DEFENDANTS' were fully aware of Maggie's training, as well as all the other measures taken by GEORGE and KATHLEEN FRIEDEL to prevent another incident, ignored and/or otherwise refused to consider it, and refused to allow Maggie to remain in the community.

96.     DEFENDANTS have failed to modify their policies in order grant a reasonable accommodation to GEORGE FRIEDEL, and instead had GEORGE and KATHLEEN FRIEDEL served with a NOTICE TO VACATE on October 18, 2017, giving them 30 days to "vacate" their home and community, while also demanding they continue to pay monthly lot rental for a home they could not inhabit.

97.     Solely because of DEFENDANTS' failure to modify policies to accommodate GEORGE FRIEDEL's disability, the FRIEDELS were forced to move from the home and community they loved and intended to live in the rest of their lives.

98.     The FRIEDELS have incurred moving costs and relocation expenses, including but not limited to inspections fees, packing, an appraisal fee, increased insurance expenses, storage costs, and several month's rent for a lot from which they were ordered to vacate.

99.     Accommodating GEORGE FRIEDEL's disability related need to live with his Maggie for emotional support would not have constituted a direct threat to the health or safety of others or result in substantial physical damage to the property of others.

100.     Accommodating GEORGE FRIEDEL's disability related need to live with his Maggie for emotional support would not have constituted a fundamental alteration of DEFENDANTS' services or imposed an undue financial and administrative burden upon DEFENDANTS.

101.     DEFENDANTS' failure to modify policies to accommodate GEORGE FRIEDEL's disability is discriminatory and unlawful.

102.     Such conduct by DEFENDANTS was in total and reckless disregard of GEORGE and KATHLEEN FRIEDEL's rights.

103.     Defendants, though the conduct and acts described above, violated the FHA, *inter alia* 42 U.S.C. § 3604(f), by failing to make reasonable accommodations in and/or to rules, policies, practices, or services, when such accommodations were necessary to afford GEORGE FRIEDEL an equal opportunity to use and enjoy his dwelling.

104.     Allowing the FRIEDELS to reside in their own home in PARK PLACE with Maggie during the last months of the dog's life would not have: (1) resulted in substantial physical

damage to the property of others; (2) posed an undue financial and administrative burden to either SUN COMMUNITIES or its PARK PLACE community; or (3) fundamentally altered the nature of DEFENDANTS' operations.

105.     Allowing the FRIEDELS to reside in their own home in PARK PLACE with Maggie after her behavior modification training and the other mitigation efforts taken by PLAINTIFFS would not have: (1) resulted in substantial physical damage to the property of others; (2) posed an undue financial and administrative burden to either SUN COMMUNITIES or its PARK PLACE community; or (3) fundamentally altered the nature of DEFENDANTS' operations.

106.     As a direct and proximate result of stress related to DEFENDANTS' failure to accommodate GEORGE FRIEDEL's need to reside with Maggie, forcing the PLAINTIFFS to move, GEORGE FRIEDEL had to have a pacemaker installed.

107.     GEORGE FRIEDEL and KATHLEEN FRIEDEL suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of their right to equal housing opportunities regardless of disability.

108.     DEFENDANTS' discriminatory conduct and actions were intentional, willful, and taken in total disregard for the FRIEDELS' rights and well-being.

> **WHEREFORE,** Plaintiffs GEORGE FRIEDEL and KATHLEEN FRIEDEL demand a judgment against DEFENDANTS declaring that DEFENDANTS' actions violated the FHA by discriminating against a person with disabilities and a person associated with a disabled person, and awarding PLAINTIFFS compensatory and punitive damages, and their attorney's fees and costs, as well as any other such relief as this Court deems just and equitable.

**COUNT III**

## ILLEGAL RETALIATION

109.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 74 as if fully set forth herein.

110.      DEFENDANTS previously only demanded that Maggie be removed from the PARK PLACE community. However, after GEORGE FRIEDEL exercised his fair housing rights by making second request for accommodation and filed a lawsuit, i.e., the Wrong Defendant Lawsuit, seeking to enforce his fair housing rights, DEFENDANTS retaliated by escalating what had merely been a command to remove Maggie, into a command directing the FRIEDELS' removal from the PARK PLACE community, thereby forcing the FRIEDELS to move from the home they owned and community they loved, and effectively punishing them.

111.      In forcing the FRIEDELS to leave the PARK PLACE community rather than simply requiring that Maggie be removed, DEFENDANTS retaliated against the FRIEDELS.

112.      DEFENDANTS, through the conduct described above, violated the FHA, *inter alia* 42 U.S.C. § 3617.

113.      As a result of the DEFENDANTS' retaliatory conduct, PLAINTIFFS GEORGE and KATHLEEN FRIEDEL suffered irreparable loss and injury including, but not limited to, mental anguish, loss of dignity, emotional distress, humiliation, and loss of their right to equal housing opportunities regardless of disability.

        **WHEREFORE,** PLAINTIFFS, GEORGE FRIEDEL and KATHLEEN FRIEDEL, demand judgment against declaring that DEFENDANTS' actions, inactions, and conduct violated the FHA by retaliating against a person with disabilities and a person associated with a disabled person, and awarding PLAINTIFFS compensatory and punitive damages, and their attorney's fees and costs, as well as any other such

18

relief as this Court deems just and equitable.

**COUNT IV**
**BREACH OF COVENT OF GOOD FAITH AND FAIR DEALING**
**AND/OR TORTIOUS INTERFERENCE WITH CONTRACT**

114.     Plaintiff re-allege and incorporate by reference paragraphs 1 through 74 as if fully set forth herein.

115.     Florida law implies a covenant of good faith and fair dealing in all contractual relationships.

116.     On November 17, 2015, GEORGE FRIEDEL and KATHLEEN FRIEDEL entered a valid contract whereby they leased a lot in the PARK PLACE community for the sum of $757.00 per month. The lease is marked, attached hereto and incorporated by reference as "Exhibit E" [hereafter "contract" and/or "lease contract"].

117.     The FRIEDELS performed all actions required of them under the contract.

118.     The FRIEDELS timely paid all assessments, dues, and fees under the lease contract, and were active, upstanding members of the PARK PLACE community.

119.     DEFENDANTS negligently and/or intentionally and otherwise unfairly denied and/or otherwise interfered with the FRIEDELS's receipt of contract benefits.

120.     DEFENDANTS' materially breached the contract and/or toriously interfered with the contract by forcing the FRIEDELS to vacate their home and abandon their community, friends, and family.

121.     DEFENDANTS' conduct did not comport with the FRIEDELS' reasonable expectations under the contract.

122.     The FRIEDELS were harmed by DEFENDANTS' conduct.

123.     Alternatively, the FRIEDELS plead that DEFENDANT SUN COMMUNITIES was

19

aware and knew of the business relationship and lease contract entered between the FRIEDELS and in the name of DEFENDANT PARK PLACE.

124.     SUN COMMUNITIES, by refusing to accommodate GEORGE FRIEDEL's disability-related need to live with his ESA, to consider the FRIEDELS' second request for accommodation, and/or by evicting the FRIEDELS from their home in the PARK PLACE community, intentionally took actions to induce and/or otherwise cause a breach or disruption of the lease contract for which there were no legal justification(s), resulting and otherwise causing damages.

   **WHEREFORE**, GEORGE FRIEDEL and KATHLEEN FRIEDEL demand judgment against the DEFENDANTS SUN COMMUNITIES and PARK PLACE, singularly and/or jointly, and awarding PLAINTIFFS compensatory and punitive damages, and their attorney's fees and costs, as well as any other such relief as this Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

   PLAINTIFFS demand a jury trial for all issues so triable.

MARCY I. LAHART PA
207 SE Tuscawilla Road
Micanopy, FL 32667
Telephone: (352) 224-5699
Facsimile: (888) 400-1464
marcy@floridaanimallawyer.com

BY: *s/ Marcy I. LaHart*
Marcy I. LaHart, Esq.
Florida Bar No. 0967009
Counsel for Plaintiffs

VENZA LAW LLC
931 Village Boulevard, #905-322
West Palm Beach, FL 33409
office: (561) 596-6329
dvenza@venzalawpllc.com

BY: *s/ Denese Venza*
Denese Venza, Esq.
Florida Bar No. 599220
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on 16th day of March, 2020, a true and correct copy of the foregoing has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: <u>s/ Marcy I. LaHart</u>

*Counsel for Plaintiffs*
