UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 2:19-CV-14394-ROSENBERG

GEORGE FRIEDEL &
KATHLEEN FRIEDEL,

      Plaintiffs,

vs.

SUN COMMUNITIES, INC.,

      Defendant.

_____/

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT AND ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT**

Defendants, Sun Communities, Inc. ("Sun Communities") and Park Place Community,

L.L.C. ("Park Place"), by and through the undersigned counsel, hereby file this Motion to

Dismiss Plaintiffs' Second Amended Complaint and Alternative Motion for More Definite

Statement, and in support thereof state:

**INTRODUCTION**

George Friedel filed his original complaint against Park Place in February of 2017 as

Case #: 17-CV-14056-RLR ("Friedel I").  Since that date, he attempted to amend his complaint

to include a revised request for accommodation, which was denied [Doc. 78, Friedel I].  As this

Court will recall, a jury determined in Friedel I that the Plaintiffs' dog ". . . posed a direct threat

to the health or safety of other individuals or that [Plaintiffs' dog] remaining in Park Place

Community would have resulted in substantial physical damage to the property of others, and

that no reasonable accommodation would have eliminated or acceptably minimized the risk

[Plaintiffs' dog] posed to other residents." [Doc. 103, Friedel I].  After losing at trial, George

Friedel filed a Motion for New Trial, which was denied [Doc. 113, Friedel I].  After losing at

trial and on his Motion for New Trial, George Friedel appealed the jury's and this Court's decisions to the Eleventh Circuit Court of Appeals.  The Eleventh Circuit Court of Appeals issued a written opinion confirming the jury's decision and this Court's decision to deny George Friedel his demanded relief was proper.

George Friedel and his wife have now filed a Second Amended Complaint in this litigation, which represents the eighth attempt to seek some sort of liability against either Park Place or its parent company, Sun Communities.  The principal amendments in Plaintiffs' Second Amended Complaint are that it now names Park Place as a Defendant.  Additionally, Plaintiffs' revised Count IV adds a claim against Sun Communities for Tortious Interference. As with the previous versions, Counts I and II are disability discrimination claims relating to George Friedel's now deceased emotional-support animal, Count III is for retaliation for the exercise of Plaintiffs' Fair Housing Rights, and Count IV is a claim for breach of the implied covenant of good faith and fair dealing in Plaintiffs' lease, as well as a claim for tortious interference[1].

As discussed below, the Second Amended Complaint should be dismissed because:

(I) Plaintiffs failed to plead plausible facts to support a claim that Sun Communities or Park Place retaliated "on account of" the filing of a discrimination claim;

(II) Plaintiffs failed to plead terms of a contract Park Place breached in bad faith;

(III) Plaintiffs failed to identify a contract or agreement between Sun Communities and Plaintiffs, which is, of course, a prerequisite to asserting a claim for breach of the implied covenant of good faith and fair dealing; and

---

[1] Plaintiffs' Count IV confusingly alleges two separate causes of action in Count IV without specifically identifying from which Defendant it seeks relief for each different cause of action.

(IV) Plaintiffs failed to plead the necessary elements for tortious interference with a contractual relationship and/or failed to identify how Sun Communities wrongfully interfered with the underlying contract.

## DISCUSSION

### I.  COUNT III – RETALIATION UNDER THE FAIR HOUSING ACT

Count III of Plaintiffs' Complaint should be dismissed because it is legally insufficient and fails to state a claim upon which relief could be granted. A retaliation claim requires well-plead facts showing that a housing provider's adverse actions were "on account of" the decision to file a discrimination complaint. See, *Fisher v. SP One, Ltd.*, 559 F. App'x 873, 877 (11th Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," plausible facts must be plead to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' sole allegation of retaliation is that Defendants "escalat[ed] what had merely been a command to remove Maggie, into a command directing the Friedels' removal from the Park Place community." [Second Amended Complaint, ¶110].  Plaintiffs' statement is a mere conclusion, and fails to consider the most obvious reason for the removal of Plaintiffs from the Park Place Community – that Plaintiffs refused to remove a dog that had been deemed vicious. Plaintiffs' claim that there was a change in Defendants' position due to the institution of Friedel I is disproved by the attachments to Plaintiffs' Second Amended Complaint and the Complaint in Friedel I; specifically, the attachments demonstrate that Defendants did not change their positions at any time.  Plaintiffs also ignore that the Defendants took every precaution to ensure that Plaintiffs' fair housing rights were not violated during or after the pendency of Friedel I.

Friedel I resulted from Park Place's issuance of a February 15, 2017 Statutory Notice to Cure (the "Notice to Cure") pursuant to Florida Statute §723.061(1)(c)(2).  That statute indicates that a landlord may evict a tenant due to the tenant's failure to comply with reasonable rules and regulations if the tenant is given seven days' notice and opportunity to cure, and then violates or continues to violate that same rule or regulation within 12 months of the 7-day notice. See §723.061(1)(c)(2) Fla. Stat. (2019).  The Notice to Cure was attached as Exhibit 3 to George Friedel's Complaint in Friedel I, and specifically states that

> ". . . you shall have seven (7) days in which to cure your violations by removing your pet dog from the premises and ceasing to threaten other residents in the Community.  ***If your fail to cure your violations within the time provided, or violate the same Rules or statute again within a twelve (12) month period, your lease agreement will be terminated and you will be provided with thirty (30) days in which to vacate the premises***."  (emphasis added)

It is important to note that the *only allegation* supporting Count III is that there was some sort of change in the Defendants' handling of the situation due to the institution of Friedel I.  The quoted correspondence above, which advised the Plaintiffs that they would be evicted if they did not remove Maggie, confirms that Defendants did not change their position regarding the Friedels as a result of the institution of Friedel I.  Park Place always intended to terminate Plaintiffs' lease agreement if Plaintiffs failed to comply with the Notice to Cure.  The October 2017 Notice to Vacate expressly refers to the February 15, 2017 Notice to Cure, and continues the enforcement action, which is the termination of the Plaintiffs' lease agreement.

While Plaintiffs would deny it, Park Place actually took extraordinary measures to ensure that Park Place was not violating Plaintiffs' fair housing rights during the pendency of Friedel I. Park Place could have sent Plaintiffs a Notice to Vacate on February 27, 2007, which is seven days after delivery of the Notice to Cure.  Plaintiffs were admittedly still in violation of the Notice to Cure, as they had not removed Maggie from the premises as directed in the Notice to

Cure.  Instead of sending a Notice of Termination, Park Place waited through the entire length of

Friedel I until a jury determined that Maggie ". . . posed a direct threat to the health or safety of

other individuals or that [Plaintiffs' dog] remaining in Park Place Community would have

resulted in substantial physical damage to the property of others, and that no reasonable

accommodation would have eliminated or acceptably minimized the risk [Plaintiffs' dog] posed

to other residents." [Exh. C to Second Amended Complaint].  The jury's determination that "no

reasonable accommodation would have eliminated or acceptably minimized the risk [Plaintiffs'

dog] posed to other residents" gave Park Place the green light to continue the eviction process

against Plaintiffs, free from worry that Park Place was infringing on Plaintiffs' fair housing

rights.  The next step in that enforcement process was the delivery of a Notice to Vacate, which

was specifically described to Plaintiffs in the Notice to Cure.  The eviction of Plaintiffs, not

Plaintiffs' dog, was contemplated and threatened in the Notice to Cure, which was prior to the

institution of Friedel I, and cannot form a basis for a retaliation claim.  If anything, Plaintiffs are

retaliating against Sun Communities and Park Place by continuing this litigation after a jury

advised Plaintiffs that their dog was a direct threat to Park Place's residents.

Plaintiffs have failed to plead plausible facts showing the Notice to Vacate was sent "on

account of" their discrimination claim.  The Notice to Vacate was sent to Plaintiffs "on account

of" their refusal to remove an unquestionably vicious dog from Park Place. In this third iteration

of the Complaint there are no facts to support a plausible inference that Defendants have engaged

in retaliation, other than mere conjecture. See, *Ashcroft*, 556 U.S. at 678 (2009). Further, the

documents attached to the Second Amended Complaint and the Complaint in Friedel I confirm

that Park Place intended to evict Plaintiffs if they refused to comply with Park Place's rules and

regulations and remove Maggie.  Count III should be dismissed with prejudice with regard to both Defendants for failure to state a claim for retaliation under the Fair Housing Act.

Even if this Court determines that sufficient facts were alleged, this Court must dismiss Count III against Sun Communities.  Plaintiffs seem to be indicating that both Sun Communities and Park Place are liable for illegal retaliation, as Count III only references "Defendants" and does not separately identify the acts of Park Place or Sun Communities that give rise to the alleged retaliation.  Plaintiffs allege that it was the "command directing the Friedels to move from the home they owned and community they loved" that gives rise to the retaliation claim [Second Amended Complaint, ¶110].  This alleged "command" came in the form of a Notice to Vacate, which was issued by Park Place.  Because the notice came from Park Place and not Sun Communities, Count III should, at a minimum, be dismissed against Sun Communities.

## II. COUNT IV FAILS TO STATE A CLAIM FOR BREACH OF THE COVENENAT OF GOOD FAITH OR FOR TORTIOUS INTERFERENCE

Count IV of Plaintiffs' Second Amended Complaint is actually two separate counts: (1) breach of the covenant of good faith and fair dealing; and (2) tortious interference.  It is unclear why Plaintiffs chose to assert two separate and distinct causes of action in one count.  Plaintiffs' Count IV alleges that both Defendants somehow materially breached the lease agreement, and that Sun Communities took actions to cause a breach or disruption of the lease.

Florida recognizes the concept that there is an implied covenant of good faith and fair dealing in every contract. *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001) *citing Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999); *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1438 (S.D. Fla. 1996); *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997).  However, there are restrictions on causes of action for breach of the implied covenant of good faith and fair

dealing.  One of those restrictions is that "the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." *Insurance Concepts and Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).

Plaintiffs' Complaint states that "Florida law implies a covenant of good faith and fair dealing in all contractual relationships." [Second Amended Complaint, ¶115].  Plaintiffs go on to state that "[o]n November 17, 2015 George Friedel and Kathleen Friedel entered contract with Park Place Community LLC whereby Park Place leased a lot to George Friedel and Kathleen Friedel for the sum of $757.00 per month." [Second Amended Complaint, ¶116].  However, Plaintiffs fail to identify any specific provision in the lease agreement that could have been breached.   Plaintiffs only state that "Defendants materially breached the contract and/or tortiously interfered with the contract by forcing the Friedels to vacate their home and abandon their community, family, and friends." [Second Amended Complaint, ¶120].  However, there is no provision in the lease agreement that states that Plaintiffs will be allowed to remain in the community with a vicious dog.  Plaintiffs cannot cite to a specific breach of the lease agreement, because there is no breach of the lease agreement.  Because there is no allegation that a specific provision of the lease agreement was breached, Count IV must be dismissed with regard to all Defendants.

As it pertains to Sun Communities specifically, in order for the covenant of good faith and fair dealing to apply, there must be a contract between the parties.  The covenant of good faith and fair dealing "is intended to protect 'the reasonable expectations of the contracting parties in light of their express agreement'." *Insurance Concepts and Design, Inc*., 785 So.2d at 1234. Here, there is no express agreement between Sun Communities and Plaintiffs.  At a minimum,

Count IV's breach of the covenant of good faith and fair dealing must be dismissed with regard to Sun Communities, as Sun Communities is not in privity with Plaintiffs. Plaintiffs even admitted to this as part of the Response to Defendant's Motion to Dismiss [Doc. 20]. Notwithstanding, Plaintiffs have again brought the same count against Sun Communities with no further legal or factual basis.

In order to assert a claim for tortious interference with a contractual right, the Plaintiffs would need to allege: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381 (Fla. 4th DCA 1999). The problem with the assertion of a tortious interference claim is that Sun Communities' alleged interference is not "unjustified." Plaintiffs attach the jury verdict form, which confirms that Maggie is incapable of being habituated to reside in Park Place. The jury found that "no reasonable accommodation would have eliminated or acceptably minimized the risk [Plaintiff's dog] posed to other residents." [Exh. C, Second Amended Complaint]. Even if Sun Communities directed Park Place to issue the Notice to Cure and Notice to Vacate, the insistence that those notices be issued was completely justified, as demonstrated by the jury, this Court, and the Eleventh Circuit Court of Appeals. Moreover, it was Plaintiffs' violation of the lease agreement, not Park Place or Sun Communities, that caused the delivery of the Notice to Cure and Notice to Vacate. The documents attached to Plaintiffs' Second Amended Complaint, namely the jury verdict, confirms that any termination of the Plaintiffs' lease was justified.

After three versions of the Complaint, Plaintiffs have failed to identify a term in the contract which would have permitted Plaintiffs to keep an unquestionably vicious animal in the

community such that Park Place or Sun Communities would be unjustified in allegedly inducing the termination of the agreement. No matter how the claims for breach of good faith and tortious interference are amended, there is no plausible claim for relief based on the underlying agreement and conduct of the parties. For the foregoing reasons, Count IV should be dismissed with prejudice.

### III. <u>MOTION FOR MORE DEFINITE STATEMENT</u>

Plaintiffs' Count IV appears to be two separate causes of action. Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the facts" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon with it rests." <u>Fed.R.Civ.P.</u> 8(a) (2019). Plaintiffs' pleading of two separate causes of action without specifically defining which defendant is liable for which, is both frustrating and confusing. It prevents the Defendants from determining which allegations and causes of action apply to which Defendant. The Southern District of Florida has previously held that when two separate causes of action are pled in one count, the plaintiff will be required to submit an amended pleading with a more definite statement. *Green v. C.B. Fleet Holding Company Incorporated,* 2008 WL 113668 (S.D. Fla. 2008); *Federal Insurance Company v. Bonded Lightning Protection Systems, Inc.*, 2008 WL 5111260 (S.D. Fla. 2008). Because there are two different Defendants and there are two different causes of action all pled within one count, this Court should require Plaintiffs to amend their pleading to be more clear. This request is only necessary if Count IV is not dismissed with prejudice as requested above.

### CONCLUSION

WHEREFORE, Defendants Sun Communities and Park Place respectfully request that this Court dismiss Plaintiffs' Second Amended Complaint with prejudice, or if justice so

requires, without prejudice with leave to amend, and grant any further and additional relief this

Court deems just and appropriate, including the requirement of an amended complaint to clarify

Count IV, and an award attorneys' fees and costs to the extent they are awardable.


Dated:  **April 3, 2020**                    Respectfully submitted,

                                             ATLAS LAW
                                             /s/ Brian C. Chase
                                             Brian C. Chase, Esq.
                                             Florida Bar No. 0017520
                                             3902 N. Marguerite Street
                                             Tampa, Florida 33603
                                             T: 813.241.8269
                                             F: 813.840.3773
                                             Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 3rd day of April, 2020, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF system which will send notice of

electronic filing to all counsel of record.

                                             /s/ Brian C. Chase
                                             Brian C. Chase, Esq.
                                             Florida Bar No. 17520


## SERVICE LIST

MARCY I. LAHART, ESQ.                        DENESE VENZA
Marcy I. LaHart, P.A.                        Venza Law LLC
207 SE Tuscawulla Road                       931 Village Boulevard
Micanopy, Florida 32667                      West Palm Beach, Florida 33409
VIA CM/ECF                                   VIA CM/ECF