UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-14394-ROSENBERG/MAYNARD

GEORGE FRIEDEL &
KATHERINE FRIEDEL,

        **Plaintiffs,**

v.

SUN COMMUNITIES, INC.,
        **Defendant.**
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

NOW COME Plaintiffs, through undersigned counsel and pursuant to Fed. Rules Civ. P. 8(a)(2), 12(b)(6), and 12(e), and file their Response in Opposition to Defendants' (SUN COMMUNITIES, INC.'s and PARK PLACE COMMUNITY, L.L.C.'s [collectively "Defendants"]) Motion to Dismiss Plaintiffs' Second Amended Complaint and Alternative Motion for More Definite Statement [ECF No. 30] ("Motion to Dismiss"). In support, Plaintiffs state:

*Summary*

Defendants challenge Counts III and IV of the Plaintiff's Second Amended Complaint and Demand for Jury Trial (ECF No. 27)("the Complaint"). Though the Motion to Dismiss is replete with irrelevant, albeit distracting, hyperbole[1] and mistruths[2] about the history of this case,

---

[1] In their efforts to malign Count IV, Defendants state "[a]fter three versions of the Complaint, Plaintiffs have failed…" Motion to Dismiss at 8. This is patently misleading. The original, or first, Complaint (ECF No. 1) was never served. Plaintiffs made stylistic changes before filing and then serving the First Amended Complaint (ECF No. 5), making it the "first" Complaint to the Defendants and Court. Moreover, it was at the Court's instruction that Plaintiffs filed the Second Amended Complaint, amended to add Defendant Park Place (see ECF Nos. 25 and 27).

[2] E.g., Defendants assert that "[a]fter losing at trial" Plaintiffs have "now filed a Second Amended Complaint" mischaracterized as "the eighth attempt to seek some sort of liability against either Park Place or its parent company, Sun Communities." Motion to Dismiss at 1-2. This mischaracterization omits the fact that the jury, deliberately kept ignorant regarding the professional training received by

the only issues *sub judice* is whether those Counts pass the lenient scrutiny dictated by the Eleventh Circuit for pleadings in FHA cases. As explained, *infra*, they more than do.

## II.     LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation and alteration omitted). For the reasons explained *infra*, the Complaint *sub judice* more than comports with Rule 8 jurisprudence requirements.

### A. ALL FACTUAL ALLEGATIONS IN THE COMPLAINT MUST BE ACCEPTED AS TRUE *AND* MUST BE CONSTRUED IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS.

The Court must accept all of the Plaintiffs' factual allegations as true in determining whether the Plaintiffs have stated a claim for which relief could be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Carpenter v Syndicated Office Systems, LLC*, 319 F.Supp. 1272, 1273-74 (S. D. Fla. 2018)(J. Marra). It must also construe those factual allegations in the light most favorable to the Plaintiffs. *Hunt v. Aimco Properties*, L.P., 814 F.3d 1213, 1221 (11th Cir. 2016) (internal citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

---

Plaintiff George Friedel's emotional assistance animal ("ESA"), a elderly Golden Retriever named "Maggie," and misled regarding the diligence of both Plaintiffs in addressing Maggie's reactivity to aggressive small dogs, nonetheless found for the Plaintiff George Friedel on four out of five questions comprising the Verdict Form. See ECF No. 27-3.

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotations omitted).

### B. THE COMPLAINT HAS FACIAL PLAUSIBILITY; THE ALLEGATIONS "POSSESS ENOUGH HEFT" TO SUGGEST PLAUSIBLE ENTITLEMENT TO RELIEF WHICH DEFEAT DISMISSAL.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation 1274*1274 marks omitted). Thus "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679, 129 S.Ct. 1937; *Carpenter v Syndicated Office Systems, LLC*, 319 F.Supp. 1272, 1273-74 (S.D. Fla. 2018).

Significantly, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Where the allegations "possess enough heft" to suggest a plausible entitlement to relief, however, the case may proceed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation and alteration omitted). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008); *id.*

"And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556; *Rovt v. Big Al's Gun and Pawn, Inc.*, Case No. 18-60880-Civ-Scola (S.D. Fla. Jan. 9, 2019).

### C. BECAUSE FHA CASES ARE UNIQUE, THE 11th CIRCUIT HAS HELD THAT ALLEGATIONS IN A DISCRIMINATION COMPLAINT SHOULD

### BE JUDGED BY THE STATUTORY ELEMENTS OF AN FHA CLAIM RATHER THAN THE STRUCTURE OF A PRIMA FACIE CASE.

FHA cases are different and merit a more lenient level of pleading scrutiny. The Eleventh Circuit Court, when confronting a Rule 12(b)(6) Motion to Dismiss a housing discrimination claim, stated:

> We have never expressly set forth the elements of a section 3604(f)(1) claim. At the pleading stage, the relevant question is whether the complaint provides a 'short and plain statement of the claim' that 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' *Swierkiewicz v Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In a discrimination case, '[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case.' *Id*. Thus, the allegations in the complaint 'should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case.'

[Further internal citations omitted.] *Hunt v Aimco Properties, L.P*., 814 F.3d 1213, 1222 (11th Cir. 2016) (emphasis added). The Court further determined that, in the FHA context, the "complaint must allege that the adverse action was taken because of a disability and state the facts on which the plaintiff relies to support that claim." *Id.* at 1221 (emphasis in original).

The Plaintiffs' FHA Complaint at issue checks off all the boxes required to withstand dismissal at the pleading stage.

### III.   ARGUMENT

#### A.   PLAINTIFFS ADEQUATELY ALLEGED THAT THEY WERE EVICTED IN RETALIATION FOR PLAINTIFF GEORGE FRIEDEL HAVING EXERCISED HIS FAIR HOUSING RIGHTS.

To state a claim for illegal housing discrimination, a plaintiff needs to demonstrate that: "(1) s/he engaged in a protected activity; (2) the defendant subjected the plaintiff to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015) (per curiam) (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001)).

Plaintiffs have alleged that George Friedel exercised his Fair Housing Rights (Complaint at ¶¶ 22, 23, 24, 30, 33, 38, and 48), and that Defendants subsequently escalated the demand that Maggie be banished from the community (*id.* at ¶¶ 53, 110) to a demand that Maggie be banished from the community *and* that the Plaintiffs also vacate the home that they owned (*id.* at ¶¶ 56, 57, 58, 59, 60, 61, 62, 63, 67, 100). The obvious inference is that but for Plaintiff George Friedel having exercised his Fair Housing Rights to challenge the demand that he remove his ESA, he and his wife would not have been evicted. Not surprisingly, Defendants disagree. Critically however, at this stage Plaintiffs are not required to disprove Defendants pre-textual justification for having demanded Plaintiffs leave their own home.

Plaintiffs have alleged that had George Friedel not exercised his Fair Housing Rights, Defendants would not have evicted he and his wife. (*Id.*) Those allegations are assumed true and are sufficient to support a claim for illegal retaliation. In fact, even just <u>threatening</u> eviction of a tenant after s/he complained of housing discrimination has been found to support a claim of retaliation. See *Bone v. Vill. Club, Inc.*, 223 F. Supp. 3d 1203 (M.D. Fla. 2016) citing *Neudecker v. Boisclair Corp.*, 351 F.3d 361, 363–64 (8th Cir. 2003) (holding that threats of eviction sufficiently alleged an adverse action sufficient to state a § 3617 claim).

**B. ALTERNATIVE PLEADING IS ALLOWED AND MANDATED IN THIS CASE BECAUSE OF DEFENDANTS' HIDE-THE-SHELL (COMPANY) GAME; THE MOTION FOR MORE DEFINITE STATEMENT IS IRONICAL AND SPECIOUS.**

As a fall-back position to their request for dismissal of Counts III and IV, Defendants request the alternative relief of a more definite statement. Motion to Dismiss at 9. Ironically it is alternative relief, or more aptly alternative pleading, which necessitated the crafting of Count IV as was done.

Rule 8 of the Federal Rules of Civil Procedure permits pleading alternative, hypothetical, or even inconsistent claims. *Christenson v City of Hollywood, Florida,* Case No. 16-cv-61217-

BLOOM/Valle. (S.D. Fla. Oct. 5, 2016). "While no specific words or formulae are required to plead in the alternative, plaintiffs must use a formulation from which it can be reasonably inferred that they are pleading in the alternative." *Id.*; *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1333, 1337 (S.D. Fla. 2014) (internal quotations and citations omitted).

The contention that counsel is confused and/or can't figure out who is alleged to have done what is specious at best. Motion to Dismiss at 9. "Defendants' contention ignores the real substance of Plaintiff[s'] [Second] Amended Complaint." *Ripple v Davol, Inc*., Case No. 2:16-CV-14455-Rosenberg/Lynch (S.D. Fla. May 31, 2017). Whether there are, indeed, two different Defendants, or whether Park Place is merely a shell-puppet operated by its parent company, Sun Communities, as is alleged (Complaint at ¶¶ 7 and 8, *et al.,* as stated *infra*), is an issue that will have to be decided by the jury. If the two Defendants are construed as a single entity, then they are both alleged to have breached the lease contract. If they are both construed as separate entities, then Park Place is alleged to have breached the lease contract, and Sun Communities is alleged to have tortiously interfered with it.

Alternative pleading is allowed. *Ullman v Florida Department of Corrections*, Case No. 5:17-cv-66-Oc-30PRL (M.D. Fla. May 15, 2017). This comports with well-established pleading jurisprudence that to survive a motion to dismiss, a complaint merely need to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqba*l, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). Again, "plausibility" is satisfied when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In the case at bar, the Defendants' entity intertwining is addressed by Paragraphs 7 and 8, as well as the Paragraphs 17, 21, 26, 27, 28, 29, 39, 40-48, 56, 59, and 61-73, which sufficiently

allows the Court (and the Defendants) "to draw the reasonable inference that [one and/or the other] defendant is liable for the misconduct alleged."

Federal Rule of Civil Procedure 12(e) provides: "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." At issue isn't a case with fifteen or even five defendants. There are only two and one is alleged to be the parent-puppeteer of the other. Nor is this a case where the at-issue complaint is ill-written or so "vague or ambiguous that the party cannot *reasonably* prepare a response." As evidenced by the four (4) pages Defendants dedicate to challenging the purported deficiencies of Count IV, as currently written it is neither "so vague" nor so "ambiguous" that they "cannot prepare a response." Motion to Dismiss at 6-9.

"In considering [a Rule 12(e)] motion, the Court should be mindful of the liberal pleading requirements of the Federal Rules of Civil Procedure, pursuant to which a 'short and plain statement of the claim' will suffice." *Perales v Heard*, Case No. 2:15-cv-14381-Rosenberg/Lynch (S.D. Fla. Mar. 31, 2016), quoting *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996) (quoting Fed. R. Civ. P. 8(a)(2)). "A motion for more definite statement is not a substitute for discovery." *Id.*

### C. THE "EXPRESS TERM" OF THE CONTRACT THAT WAS BREACHED IS THE VERY ESSENCE OF THE LEASE CONTRACT ITSELF: I.E., THE LOT. DEFENDANTS' TECHNICAL READING OF FLORIDA LAW IS MISPLACED AND NOT VALID SUPPORT FOR DISMISSAL.

Defendants next attack Plaintiffs' claim for breach of the covenant of good faith and fair dealing. Although Defendants concede that, in Florida, there is such an implied covenant in every contract, they contend that Plaintiffs' claim of breach of that covenant is deficient because "Plaintiffs fail to identify any specific provision in the lease agreement that could have been

breached." Motion to Dismiss at 6-7. Defendants further argue that "Plaintiffs only state that 'Defendants materially breached…by forcing the Friedels to vacate their home…'" and that because there is "no provision in the lease agreement that states Plaintiffs [can have] a vicious[3] dog" there can be no breach and thus no pointing-to a "specific provision of the lease agreement" as breached. *Id.*

Defendants' contention is flawed in both analysis and application of Florida law.

In *Snow v Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So.2d 787, (2nd DCA 2005) (rehearing denied February 22, 2005), a whistle-blower employee sued her former employer for, *inter alia,* breach of the implied covenant of good faith of her at-will employment contract. The *Snow* Court determined:

> as stated in *Avatar Development Corp. v. De Pani Construction, Inc*., 834 So.2d 873, 876 (Fla. 4th DCA 2002), 'the covenant of good faith cannot be used to create a breach of contract on [one party's] part where there was no breach of any express term of the contract.' In *Avatar*, the court held that the defendant's ulterior motive for the plaintiff's termination had no relevance because their contract gave the defendant the right to terminate the plaintiff at any time and Florida law requires nothing more of the defendant. *Id.* Thus, the duty of good faith performance does not exist until a plaintiff can establish a term of the contract the other party was obligated to perform and did not.

*Id*. at 791-792. Because the at-will employment contract at issue gave the Defendant the right to fire the Plaintiff at any time for any reason or no reason, the Court determined there was no term

---

[3] Defendants also blatantly misrepresent that Maggie was determined by the jury to be "vicious." She was not. The jury, hearing only outdated accountings of Maggie's behavior and outright misleading accounts of the Friedels' conduct, determined only that Maggie posed a threat to residents or their property. Maggie's only actual sins during her years at Park Place were straining on a leash while barking back at dogs that were straining on their leashes and barking at her, chasing another dog on a single occasion, and getting involved in an altercation with another dog – which the other dog had instigated. None of these incidents rise to the level of "vicious," nor did a jury determine them to be. Moreover, not a scintilla of evidence was presented indicating that Maggie had so much as looked cross-eyed at a human being. The hyperbolic assertion that Maggie was "vicious" is merely Defendants oft-repeated, "if-it-doesn't-fit" mantra, not a determination of any jury.

of the contract the Plaintiff could point to that the Defendant was obligated to perform in good faith and did not. *Id.* at 792. In other words, there could be no breach of the covenant of good faith and fair dealing in the at-will employment contract because the Defendant simply had no duty not to fire the Plaintiff.

Similarly, in *Hospital Corporation of America v. Florida Medical Center, Inc*., (4th DCA 1998)(rehearing and cert. denied Mar. 30, 1998)(per curiam)(citations omitted), involving a dispute over the sale of hospital contracts, after dismissing the covenant not to compete term as void, the Court observed that "no express terms in the contract addressed how HCA [the Defendant] was to conduct its business after taking ownership" and held:

> With respect to Appellee's claimed breach of an implied duty of good faith, a duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements. See *Bernstein v. True,* 636 So.2d 1364 (Fla. 4th DCA 1994) (covenant of good faith not actionable where contract not enforceable); *Hall v. Burger King Corp*., 912 F.Supp. 1509, 1544 (S.D. Fla.1995)…Before the duty of good faith attached, FMC [the Plaintiff] was required to establish that there was a term of the contract which HCA was obligated to perform. **Allowing FMC to pursue the claim for breach of duty of good faith where no enforceable executory contractual obligation on HCA's part remained** would add an obligation to the contract which was not negotiated by the parties and not in the contract.

*Id.* at 575 (emphasis added). Because the Court determined that there was no actual contract which remained existing between the parties, there could be no breach of the good faith and dealing covenant.

In the instant case, the contract at issue is the lease contract, whose core terms are simple: Plaintiffs pay rental monies and Defendants provide them a lot. See Lease Contract, Exhibit E at ECF No. 27-5. In complete conformity with Florida law, the "specific lease provision" to which Plaintiffs cite is that lease itself: "On November 17, 2015, [Plaintiffs] entered a valid contract whereby they leased a lot in the PARK PLACE community for the sum of $757.00 per month." Complaint at ¶116.

Unlike the Plaintiff in *Snow* who sued over an at-will contract which allowed the Defendant to fire her for any time for any (or no) reason, and unlike the *Hospital Corporation* case where there was no remaining contract between the parties, the lease contract at issue in the instant case does not give the Defendants the unfettered right to evict Plaintiffs at any time for any (or no) reason, nor is there any question as to its existence. The enforceable, contractual obligation required to be provided was a lot, an obligation which, as alleged by Plaintiffs, was "materially breached" when they were forced "to vacate their home and abandon their community, friends, and family." Complaint at ¶ 120.

At this motion-to-dismiss stage, Plaintiffs are not required to prove that either Defendant breached the covenant of good faith and fair dealing when Plaintiffs were evicted, nor are Plaintiffs required to prove that Defendants are one in the same entity. Where the allegations "possess enough heft" to suggest a plausible entitlement to relief the case may proceed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation and alteration omitted). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element*." Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008); *id.*

Defendants' assertion that "[a]s it pertains to Sun Communities specifically, in order for the covenant of good faith and fair dealing to apply, there must be a contract between the parties" is simply wrong. Motion to Dismiss at 7. In Florida, a protected business relationship need not be evidenced by an enforceable contract. *Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985). All that is required is that "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Register v. Pierce*, 530 So.2d 990, 993 (Fla. 1st DCA 1988). That is clearly the case under the facts as pled. (Complaint at ¶¶ 7, 8, 9, 12, 13, 17, 23, 24, 25, 26, 27, 28, 29, 38, 39, 57 61, 63, 64, 65, 66, 72, 73, 77, 78, 91, 93, 95, 96, 97, 103, 112, and 116.)

> **D.     UNDER THE FACTS ALLEGED IN THE CASE *SUB JUDICE*, I.E., THE FRIEDEL CASE ACTUALLY BEFORE THE COURT, IT IS NOT ONLY PLAUSIBLE BUT MORE   THAN PROBABLE A JURY WILL FIND THE DEFENDANTS' ACTIONS "UNJUSTIFIED." THUS PLAINTIFFS HAVE SATISFIED THE PLEADING REQUIREMENT OF PLAUSIBILITY OF TORTIOUS INTERFERENCE.**

The parties agree that in order to state a claim for tortious interference, Plaintiffs must allege: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). The Florida Supreme Court has explained that the tort of intentional interference with business relationships is recognized because "economic relations are entitled to freedom from unreasonable interference." *United Yacht Brokers, Inc. v. Gillespie*, 377 So.2d 668, 672 (Fla.1979).

In fact, in Florida, an action for intentional interference is appropriate even though it is predicated on an ***unenforceable*** agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered. *United Yacht Brokers v. Gillespie*, 377 So.2d 668 (Fla. 1979); *Scussel v. Balter,* 386 So.2d 1227 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla. 1981).  See also *Charles Wallace Co. v. Alternative Copier Concepts, Inc.*, 583 So.2d 396, 397 (Fla. 2d DCA 1991) ("[A]n action for intentional interference with a business relationship or expectancy will lie if the parties' understanding would have been completed if the defendant had not interfered."); *United Yacht Brokers v. Gillespie*, 377 So.2d 668 (Fla. 1979) (claim for tortious interference can be maintained even though business relationship is based on a contract which is void and unenforceable).

In *Gossard v ADIA Services, Inc.*, 723 So.2d 182 (Fla. 1998), the Florida Supreme Court answered the certified question on appeal from the Eleventh Circuit Court of Appeals[4] of "whether Florida law recognizes a claim for tortious interference against a corporation which purchases as a subsidiary a corporation which has a preexisting obligation not to compete against its franchisee, plaintiff herein, and subsequently purchases another subsidiary which is in direct competition with the franchisee" in the affirmative:

> From the factual background provided by the federal circuit and district courts, we understand Gossard's claim to be based on the following assertions. Nursefinders and Gossard had an 'agreement' that neither a parent nor affiliate of Nursefinders would provide similar health care services within Gossard's territory. Adia was aware of this 'agreement' at the time it purchased Nursefinders. Adia then purchased Star-Med, a direct competitor of Gossard located in Gossard's territory. Consequently, Star-Med became Nursefinders' affiliate by virtue of their common parent, Adia. Therefore, by purchasing Star-Med, Adia knowingly caused Nursefinders to be in breach of its 'promise' to Gossard that neither a parent nor affiliate of Nursefinders would provide similar health care services within Gossard's territory. Stated another way, because of Adia's purchase of Star-Med, Nursefinders had 'no choice' but to be in violation of its franchise agreement with Gossard. See Restatement (Second) of Torts, § 766 cmt. h. (1979).
>
> Assuming the trial record contains sufficient evidence to support this theory, we conclude that these allegations establish a prima facie case of tortious interference under our decision in *Ethan Allen*.[5] We hold that our precedent is consistent with section 766 of the Restatement and comment h. thereto. **Gossard's assertions regarding Adia's conduct in this case fall within the 'otherwise causing' language of the Restatement.**
>
> Accordingly, we answer the certified question in the affirmative...

*Id.* at 184-185 (footnote omitted)(emphasis added). In short, the Florida Supreme Court shot down the corporate defendant entities' intertwining as a technical defense to tortious interference. See *id.*

---

[4] *Gossard v. Adia Services, Inc.*, 120 F.3d 1229, 1231 (11th Cir.1997).

[5] *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812 (Fla.1994).

In the case at bar, the Defendants' primary grounds for requesting dismissal of the tortious interference claim – with prejudice – is that "Sun Communities' alleged interference is not 'unjustified.'" Motion to Dismiss at 8. Defendants point to the jury finding in the Friedel 1 in support (i.e., "The jury found that 'no reasonable accommodation would have eliminated or acceptably minimized the risk [Plaintiff's dog] posed to other residents…the jury verdict [] confirms that any termination of the Plaintiffs' lease was justified."). *Id.* The Defendants wrongly submit a summary judgment analysis in a motion to dismiss context and once again implicitly ignore their purported entity separation when it suits them.

First, Friedel 1 was a lawsuit against Park Place and Park Place only. Before the jury was Park Place's affirmative defense; consequently implicitly a part of the jury's consideration of the issues of whether the ESA at issue (i.e., Maggie) posed a direct threat to the health and safety of others and whether a reasonable accommodation could have eliminated or minimized such threat was Park Place's, and only Park Place's, actions. Sun Communities' actions were not before the jury.[6] Thus, whether Sun Communities' actions were "not unjustified" was simply not at issue.

Moreover, in pointing to Friedel 1, Defendants omit the fact that the jury was kept deliberately ignorant as to the professional training received and successfully completed by Maggie, as well as deliberately misled as to both the Plaintiffs' diligence in addressing Maggie's reactivity to aggressive dogs, and most importantly, the successful elimination of such reactivity. In the instant matter, Plaintiffs have specifically alleged these circumstances and events, i.e., Maggie's training and reactivity elimination as well as Defendants' unjustified refusal to even consider the training and/or reactivity elimination much less as adequate enough to allow a geriatric dog and her guardians to

---

[6] To say that it was "Plaintiffs' violation of the lease agreement, not Place Place['s] or Sun communities['] that caused the delivery of the Notice to Cure and Notice to Vacate" is not only ludicrous, but just plain meaningless to the issue of whether Plaintiffs' have sufficiently pled a claim for tortious interference. Motion to Dismiss at 8.

remain in their home. Accordingly, whether Park Place's and/or Sun Communities' actions were or were not justified is squarely on the litigation table in this case.

Again, a party accused of contractual interference need not be a party to the contract. One only need: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381 (Fla. 4th DCA 1999). To accept Defendants' argument that Sun Communities' actions were "not unjustified," one must necessarily employ a heightened pleading analysis – which is expressly prohibited in this context in the Southern District. In the Southern District, in addition to FHA claims, evaluation of tortious interference are limited to analysis of whether the claim is plausible, not possible:

> Defendants next argue that Plaintiff fails to allege certain specific facts with respect to the nature of Plaintiff's relationship and the type and volume of product affected. However, Defendants do not cite to any legal authority for the proposition that a claim for tortious interference is subject to a heightened pleading standard. In fact, such a claim is subject to the standard in Rule 8. See *Nationwide Life Ins. Co. v. Perry*, No. 9:12-CV-80194, 2012 WL 4838986, at *5 n.6 (S.D. Fla. Oct. 11, 2012) (rejecting argument that tortious interference must be pled with specificity under Rule 9); *Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc*., 770 F. Supp. 1530, 1537 (M.D. Fla. 1991) (stating that Rule 8 standard applies to a tortious interference claim). At this stage, Plaintiff needs only state a claim that is plausible, not probable, but certainly more than merely possible. *Iqbal*, 556 U.S. at 678. Under the circumstances, the Court finds that Plaintiff has satisfied its pleading requirements.

*Conseal International Incorporated v. Bolster America, Inc.*, Case No. 16-cv-61027-BLOOM/VALLE (S.D. Fla. Nov. 7, 2016).

That a different jury, armed with all facts as pled in the Complaint (including Maggie's extensive professional training and successful elimination of reactivity), will find Sun

Communities' eviction actions unjustified is more than just plausible – it's likely. Dismissal of Plaintiffs' claim of tortious interference at this juncture is legally improper.

## IV.   CONCLUSION

The Court must accept all of the Plaintiffs' factual allegations as true in determining whether they have stated a claim for which relief could be granted, and it must construe those factual allegations in the light most favorable to them. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Carpenter v Syndicated Office Systems, LLC*, 319 F.Supp. 1272, 1273-74 (S. D. Fla. 2018)(J. Marra); *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). Analysis of the Second Amended Complaint as a whole demonstrates that it contains factual allegations that are more than sufficient to satisfy Fed. R. Civ. P. 8. Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss the Second Amended Complaint and Alternative Motion for More Definite Statement (ECF No. 30) in its entirety.

Respectfully submitted,

| | |
|---|---|
| MARCY I. LAHART, P.A. | VENZA LAW, PLLC |
| *s/ Marcy LaHart* | *s/ Denese Venza* |
| Marcy I. LaHart, Esq. | Denese Venza, Esq. |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| (352) 545-7001 | (561) 596-6329 |
| marcy@floridaanimallawyer.com | dvenza@venzalawpllc.com |
| Florida Bar No. 0967009 | Florida Bar No. 0599220 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of April, 2020, a true and correct copy of the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT has been furnished via CM/ECF electronic mail service to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

BY: *s/ Denese Venza*
Denese Venza, Esq.