UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-CV-14394-ROSENBERG

GEORGE FRIEDEL & KATHLEEN
FRIEDEL,

  Plaintiffs,

v.

SUN COMMUNITIES, INC. & PARK
PLACE COMMUNITY, LLC,

  Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

  This case marks the second time that Plaintiffs have engaged in litigation pertaining to their dog, Maggie.  In their first case, styled as *Friedel v. Park Place Community, LLC*, ("*Friedel I*,")[1] Plaintiffs alleged that Maggie was an emotional comfort assistance animal, that a Plaintiff was disabled via depression, and that Maggie was necessary to assist with the depression.  Plaintiffs alleged that they had been threatened with eviction over Maggie—wrongfully—and that the Defendant in that case, Park Place, should be held liable for the threatened eviction.  *Friedel I* proceeded to a trial by jury.  The jury found that Maggie was a dangerous animal that threatened the safety of Plaintiffs' neighbors and, as a result, the jury concluded that Park Place's actions were lawful.  Plaintiffs filed a motion for new trial, which the Court denied.  Plaintiffs appealed the jury verdict, the Court's rulings at trial, the Court's pretrial rulings, and the Court's denial of the motion for new trial.  The Eleventh Circuit affirmed.  After the affirmance, Plaintiffs filed the lawsuit before the Court, *Friedel II*.

---

1 Case 17-CV-14056.

*Friedel II* concerns the same dog, the same Plaintiffs, the same eviction, and it is filed by the same counsel. Initially, Plaintiffs' Complaint did not cite or discuss *Friedel I* in any way. Plaintiffs made no mention of the jury trial or the jury verdict in *Friedel I*. Nor did Plaintiffs reference the jury finding that their dog was a dangerous animal. Instead, Plaintiffs made virtually identical allegations (again contending a wrongful eviction) against a new Defendant—Sun Communities.

Sun Communities, a Defendant in this case, is the parent company of the Defendant in *Friedel I*, Park Place. Plaintiffs sued Park Place in *Friedel I* because Park Place was the company that appeared on Plaintiffs' lease agreement. Park Place also appeared on the eviction notice in *Friedel I*. Defendant Sun Communities argued in a prior Motion to Dismiss that Defendant Park Place should be joined as a necessary party. The Court agreed and ordered Plaintiffs to join Park Place in this case. Plaintiff complied by filing a Second Amended Complaint which named Park Place as an additional Defendant. Defendants thereafter jointly filed the Motion to Dismiss before the Court.

## ANALYSIS

Defendants argue that Plaintiffs' Second Amended Complaint should be dismissed for several different reasons. The Court first considers Plaintiffs' first and second counts (alleging housing discrimination) before turning to Plaintiffs' third and fourth counts (alleging retaliation and tortious business interference).

### Plaintiffs' Count I and Count II

Defendants argue that Plaintiff cannot plausibly allege their claims "making a dwelling unavailable because of a handicap" (Count I) and "failure to reasonably accommodate" (Count II).

Such claims were brought by Plaintiffs in *Friedel I*.  The only difference between the claims in *Friedel I* and *Friedel II* is the timing of the underlying request for disability accommodation.  The Court's decision on this point warrants an explanation grounded in the sequence of events in *Friedel I*.

In *Friedel I*,[2] Plaintiffs' dog (Maggie) attacked another dog (Buddy), and the attack required Buddy to receive veterinary care.  After the attack, Park Place issued a notice of violation to Plaintiffs, informing them that Maggie had to be removed from the community.  In response, Plaintiffs did not claim that they were disabled or that Maggie was an emotional comfort assistance animal that assisted with a disability.  Instead, Plaintiffs removed Maggie from the community. Two months later, however (in April of 2016), Plaintiffs brought Maggie back to live with them in secret.  Maggie's presence in Plaintiffs' home went undetected for nine months, but in January of 2017 a neighbor saw Maggie.  Three days after Maggie was discovered, Plaintiffs informed Park Place that (i) Plaintiff George Friedel was disabled via depression and (ii) Maggie was his emotional comfort assistance animal.  After the parties exchanged letters regarding their respective positions on whether Maggie could be removed from the community, Park Place served a notice of violation on Plaintiffs, informing Plaintiffs that if Maggie was not removed, Plaintiffs would face eviction.  Four days later, Plaintiffs filed *Friedel I*, contending that the refusal of Park Place to accommodate George Friedel's disability was a violation of the Fair Housing Act.

---

2 The Court takes judicial notice of the facts, orders, and documents in *Friedel I*, which the Court may do without converting a motion to dismiss into a motion for summary judgment.  *Horne v. Potter*, 892 F. App'x 800, 802 (11th Cir. 2010); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).  The facts referenced above are taken from the parties' pretrial stipulation at docket entry 80 in *Friedel I*.  In addition to taking judicial notice of *Friedel I*, the Court also considers *Friedel I* because it is referenced and discussed in Plaintiffs' operative Second Amended Complaint.

3

As *Friedel I* proceeded through discovery, Plaintiffs did not seek leave to amend their operative complaint. As a result, the complaint in *Friedel I* was limited to the events in January and February of 2017, and whether Park Place's actions during that time violated the Fair Housing Act. Trial was set for October of 2017. In the summer of 2017—after the deadline to amend pleadings had passed—Maggie underwent behavioral training to teach her not to attack other dogs. Park Place took the position that such training was irrelevant to whether it had violated the Fair Housing Act in February and sough to exclude evidence of that training via a motion in limine. The Court agreed and granted Park Place's motion in limine.

After the Court issued its adverse ruling in limine on dog training, Plaintiffs sent a new request for accommodation to Park Place, citing the dog training that Maggie had received. When Park Place denied that request, Plaintiffs sought leave to amend their complaint to make their second request for accommodation relevant to trial and, through that amendment, Maggie's additional training would become admissible evidence. The Court, noting that trial was only one month away, denied that request on the grounds that Plaintiffs had waited too long—the close approximation of trial meant that such an amendment would prejudice Park Place. At trial, Plaintiffs argued that the Court's denial of leave to amend was reversible error, but the Court did not alter its ruling. After trial, Plaintiffs filed a motion for new trial, again arguing that their inability to present evidence of Maggie's additional training warranted a new trial. The Court denied Plaintiffs' motion. On appeal, Plaintiffs argued that the Court's denial of leave to amend was error, but the Eleventh Circuit affirmed the Court's ruling in a written opinion.

Turning back to *Friedel II*, the reason Plaintiffs have brought the same claims that they brought in *Friedel I* is that while *Friedel I* concerned Park Place's refusal in February of 2017 to

4

accommodate Plaintiffs, *Friedel II* is focused on Park Place's refusal to accommodate in September of 2017—the second request for accommodation that was premised on Maggie's behavioral training shortly before trial. Thus, *Friedel II* is really about the Court's denial of leave to amend in *Friedel I*. Plaintiffs have taken their amended complaint that they wanted to file in *Friedel I* and have filed it here, in *Friedel II*.

Defendants contend that Plaintiffs cannot plausibly allege a claim for Park Place's denial of a request for disability accommodation. The Court agrees. The adverse action that forms the basis for Plaintiffs' Second Amended Complaint is that the day after trial concluded in *Friedel I*, Park Place issued a notice to vacate to Plaintiffs. Plaintiffs must therefore plausibly allege that when Park Place issued its notice to vacate, it did so because it wanted to discriminate against Plaintiffs.[3] In other words, Plaintiffs have attempted to allege that Park Place's eviction notice was traced to Plaintiffs' *second* request for accommodation, not Plaintiffs' *first* request for accommodation. Thus, Plaintiffs ask for this Court to plausibly infer that when Park Place issued its eviction notice, it was not because it had just prevailed at trial or because a jury had just found that Maggie was a dangerous animal, but was instead out of a desire to discriminate. This allegation is not plausible. The Court uses a hypothetical to elaborate on its ruling.

Suppose *Friedel I* was a case that spanned eight months. Suppose that in *Friedel I*, Plaintiffs obtained additional training for Maggie two days before trial, and suppose that Plaintiffs issued their second request for accommodation one day before trial, which Park Place denied. Suppose again that trial concluded in a single day, with Park Place's notice of eviction immediately

---

[3] "[S]ection 3604(f)(1) makes it unlawful to discriminate in the rental of, or to otherwise make unavailable or deny, a dwelling because of a disability of the renter or a person associated with the renter." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1222 (11th Cir. 2016) (citing 42 U.S.C. § 3604(f)(1)).

following.  In such a scenario, it is simply not plausible that Park Place's decision to evict would be causally connected to Plaintiffs' second request for accommodation in lieu of Plaintiffs' first request.  The Court's hypothetical, however, is not far from the truth.  *Friedel I* did span eight months, and Plaintiffs' second request for accommodation and motion for leave to amend came only slightly over a month before trial.  At that point, discovery had long been closed and the parties were engaged in the final preparations for trial.  Plaintiffs could have obtained additional training for Maggie while Maggie was hidden in their home, Plaintiffs could have obtained additional training for Maggie during the period of time allotted for the amendment of pleadings, or Plaintiffs could have obtained additional training for Maggie during the discovery period and accompanied that training with a motion for leave to amend.  But Plaintiffs did none of those things.  If Plaintiffs' position were taken to its logical conclusion, a suit under the Fair Housing Act involving an animal could *never* result in eviction.  No matter how many times a defendant prevailed at trial, under Plaintiffs' theory, a new request for accommodation could be transmitted shortly before trial and, should an eviction notice issue after trial, that eviction notice would be unlawful.  Plausibility stands as a barrier, however, to such result.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility exists when a court may draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  But when the factual allegations are "not only compatible with, but indeed [are] more likely explained by lawful activity, the complaint must be dismissed."  *Id.* at 680.  Here, the most plausible and most likely reason Park Place issued its notice of eviction was because, on the day prior, Park Place prevailed in a trial by jury—Park Place had just established

through a jury verdict that Maggie was a dangerous animal to its community.  Plaintiffs have provided no plausible, factual allegations to overcome this very likely, very plausible explanation for Plaintiffs' eviction.  Stated succinctly, Plaintiffs waited too long.  Plaintiffs waited too long to give Maggie additional behavioral training,[4] and Plaintiffs waited too long to seek leave to amend to add the issue of additional training to the *Friedel I* litigation.  Because Plaintiffs' allegations are implausible, Plaintiffs' Count I and Count II are dismissed.  Because further amendment on this issue would be futile and because Plaintiffs have already had the opportunity to amend, the Court's dismissal is with prejudice.  *Hall v. United Ins. Co.*, 367 F.3d 1255, 1262 (11th Cir. 2004).

<u>Plaintiffs' Count III</u>

Plaintiffs' third claim is a claim for retaliation.  Plaintiffs allege that because they filed *Friedel I* and because they submitted their requests for accommodation, Defendants evicted them from their home.  Plaintiffs' claim for retaliation is dismissed for the same reasons Count I and Count II are dismissed.  It is simply not plausible that, as Plaintiffs allege, Park Place's notice of eviction was issued in retaliation for Plaintiffs' initiation of *Friedel I*.  Plaintiffs were clearly on notice in *Friedel I* of the potential consequences for refusing to remove Maggie from their home. The most plausible, likely, and lawful explanation for Plaintiffs' eviction is that Park Place prevailed at trial in proving that Maggie was a dangerous animal to the community, coupled with Plaintiffs' refusal to remove Maggie from their home.  Count III is dismissed with prejudice for the same reasons as Count I and Count II.

---

4 Plaintiffs were on notice as early as February 2016 that Maggie needed training.

<u>Plaintiffs' Count IV</u>

Plaintiffs' final and fourth count is for breach of the covenant of good faith and fair dealing and tortious business interference.  Putting aside Plaintiffs' improper co-mingling of distinct legal claims into the same count (both are premised on Plaintiffs' lease agreement), Plaintiffs have failed to allege either claim.  With respect to the breach of the covenant of good faith, Plaintiffs do not explain how this covenant was breached.  Under Florida law, to state a claim Plaintiffs are required to have "an allegation that an *express* term of the contract has been breached." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001) (emphasis added).  This requirement is mandatory. *Id.*  In response to this case law, instead of pointing the Court to a provision of the lease agreement that was breached, Plaintiffs take the position that the breach was of the entire "lease itself."  DE 31 at 7.[5]  Plaintiffs provide no legal authority for the proposition that they are exempt from needing to point to an *express* provision of the contract that was breached.  The Court therefore rejects Plaintiffs' position for two reasons.  First, Plaintiffs' position contravenes Florida law—Plaintiff must at least identify which *express* portion of the lease agreement was breached.  Second, there is no provision in the agreement that would allow Plaintiffs to remain in their home with an animal found by a jury to be a danger to the community.  Plaintiffs' breach of the covenant of good faith claim is dismissed.[6]  This dismissal is with prejudice because Plaintiffs have already had the opportunity to amend and because further amendment would be futile for the reasons discussed in this Order.

---

5 Before Plaintiffs took the position that the breached clause "was the lease itself," Plaintiffs conceded that they had not stated a claim.  DE 20 at 10.

6 Plaintiffs' breach of good faith claim must also be dismissed against Defendant Sun Communities because there is no contract between Plaintiffs and Sun Communities.

With respect to tortious business interference, such a claim may only exist when the alleged interference (eviction) was *unjustified*.[7]  Here, the alleged interference of eviction was *justified* by virtue of the jury verdict in *Friedel I*, the verdict form for which is attached to Plaintiffs' Second Amended Complaint.  Count IV is dismissed with prejudice as further amendment would be futile and Plaintiffs have already had the opportunity to amend.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss [30] is **GRANTED** and each of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.  All other pending motions are **DENIED AS MOOT**.  The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 18th day of May, 2020.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

7 *E.g., Salit v. Ruden*, 742 So. 2d 381 (Fla. Dist. Ct. App. 1999).