# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

FILED BY _____ AP _____ D.C.

Sep 22, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

For rules and forms visit
www.ca11.uscourts.gov

September 22, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 20-12275-DD
Case Style: George Friedel v. Sun Communities Inc., et al
District Court Docket No: 2:19-cv-14394-RLR

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
## For the Eleventh Circuit

_____

No. 20-12275

_____

District Court Docket No.
2:19-cv-14394-RLR

GEORGE FRIEDEL,

                Plaintiff - Appellant,

KATHLEEN FRIEDEL,

                Plaintiff,

versus

SUN COMMUNITIES, INC.,
PARK PLACE COMMUNITY L.L.C.,

                Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: August 24, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Jeff R. Patch

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12275
Non-Argument Calendar
_____

D.C. Docket No. 2:19-cv-14394-RLR

GEORGE FRIEDEL,

                         Plaintiff - Appellant,

KATHLEEN FRIEDEL,

                         Plaintiff,

versus

SUN COMMUNITIES, INC.,
PARK PLACE COMMUNITY L.L.C.,

                         Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 24, 2021)

Before JORDAN, GRANT and MARCUS, Circuit Judges.

PER CURIAM:

George and Kathleen Friedel (the "Friedels") appeal the district court's order dismissing with prejudice their action against Sun Communities, Inc. and Park Place Community, LLC. This is the Friedels' second case about their dog Maggie. In the first one, Friedel v. Park Place Cmty., LLC ("Friedel I"), 747 F. App'x 775 (11th Cir. 2018), the Friedels sued Park Place, a mobile home park where they've lived with Maggie, for disability discrimination in violation of the Fair Housing Act ("FHA"). Following a jury trial that found in favor of Park Place, the Friedels filed the complaint in the instant action, Friedel II. Friedel II concerns the same circumstances, but the Friedels sued a new defendant, Sun Communities, the parent company of the defendant in Friedel I, Park Place. The district court ordered the Friedels to join Park Place as an additional defendant in this case, which they did in a second amended complaint that raised FHA and state law claims. Thereafter, the district court dismissed their claims with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and held that any amendment of the complaint would have been futile. After careful review, we affirm.

The Friedels' allegations, gleaned from the complaint, its attachments, and the prior lawsuit,[1] are these. George Friedel suffers from "several chronic physical and mental impairments" and major depressive disorder. The Friedels say that because

---

[1] The district court properly took judicial notice of the facts, orders, and documents in Friedel I, especially since the case was discussed in the Friedels' second amended complaint. See Cash Inn of Dade, Inc. v. Metro. Dade Cty., 938 F.2d 1239, 1243 (11th Cir. 1991).

2

his "disabilities substantially limit one or more of his major life activities," he has a "handicap" under the FHA. Maggie was an 11-year-old golden retriever serving as George's emotional support animal and living with the Friedels in Park Place. In January 2016, before Friedel I was filed, Maggie bit a dog living in Park Place. After the attack -- which was not the first time Maggie displayed aggressive behavior or injured another dog in the community -- Park Place issued a notice of violation to the Friedels, notifying them that Maggie had to be removed from the community.[2]

The Friedels complied with Park Place's notice of violation; notably, they did not inform Park Place that George was disabled, nor did they claim that Maggie was an emotional support animal assisting George. However, the symptoms of George's depression "immediately worsened" when Maggie left, and in April 2016, the Friedels secretly brought Maggie back to live with them. The symptoms of George's depression "significantly lessened" once Maggie returned. Maggie lived with the Friedels, undetected, until a neighbor spotted her in January 2017.

At this point, the Friedels made a formal request for accommodation, informing Park Place that George was diagnosed with depression and, thus, disabled, and that Maggie was his emotional support animal. Meanwhile, at the direction of

---

[2] Section 8.B of Park Place's Rules provides that "[d]angerous or aggressive pets are not allowed. Any animal that displays dangerous or aggressive behavior, as determined by Management in its sole and unfettered discretion, must be removed from the premises." The lease agreement incorporated these community rules by reference and further provided that violation of the rules "shall be grounds for eviction from the park."

3

Sun Communities, Park Place requested that the Friedels remove Maggie again and alerted them that a failure to comply could result in eviction.  On February 15, 2017, Park Place sent another notice to cure, requiring the Friedels to remove Maggie or face eviction.  Four days later, the Friedels filed the complaint in Friedel I, claiming that Park Place's refusal to accommodate George's disability violated the FHA.

At trial, the jury found that:  (1) Park Place took action that made George's home unavailable to him; (2) George was disabled within the meaning of the FHA; (3) Park Place would not have taken adverse action against George if not for his dog, Maggie; and (4) Maggie alleviated one or more of the symptoms of George's disability.  However, the jury credited Park Place's affirmative defense that Maggie posed a direct threat to the health or safety of other individuals and no reasonable accommodation would have eliminated or acceptably minimized the risk Maggie posed to other residents.  We affirmed the district court's judgment on appeal in full.  Friedel I, 747 F. App'x at 776.  On October 18, 2017, the day after the trial concluded, Park Place served the Friedels with a notice to vacate within 30 days.

This lawsuit followed.  The Friedels now allege that as of October 18, 2017, "Maggie had received more than nine months of professional training and had not demonstrated any recent conduct indicating" that she "posed a direct (or any) threat to other residents or their property."  The Friedels claim the defendants discriminated against them in violation of the FHA by issuing the October 2017 notice to vacate

4

after they sent Park Place a new request for accommodation outlining the behavior training Maggie had received.  They further allege that the defendants breached the implied covenant of good faith and fair dealing within their lease agreement or tortiously interfered with their lease agreement.  The district court dismissed all the Friedels' claims for failure to state a claim, and the Friedels appealed to this Court.

We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).  To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[A] formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).  Rather, the "complaint must include factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).  We may consider the exhibits attached to the complaint on a 12(b)(6) motion.  Fed. R. Civ. P. 10(c); Thaeter v. Palm Beach Cnty. Sheriff's Off., 449 F.3d 1342, 1352 n.7 (11th Cir. 2006).

First, we are unpersuaded by the Friedel's claim that the defendants discriminated against them by making a dwelling unavailable because of a handicap. Under the FHA, it is unlawful to discriminate in the rental of housing "because of" a "handicap" or to refuse to make a "reasonable" accommodation to rules or policies when necessary to afford equal use of a dwelling. 42 U.S.C. § 3604(f)(1)(A), (f)(3)(B). To state a claim for discrimination "because of" a disability, "a complaint must allege that the adverse action was taken because of a disability and state the facts on which the plaintiff relies to support that claim." Hunt v. Aimco Properties, L.P., 814 F.3d 1213, 1222 (11th Cir. 2016) (emphasis in original). It is undisputed that George has a handicap under the FHA. The critical issue is whether the Friedels alleged facts sufficient to support a claim that the adverse action -- the issuance of the notice to vacate in October 2017 -- was taken because of George's disability.

Here, the Friedels failed to plausibly state facts supporting their vague allegation that Park Place issued the notice to vacate because of George's disability. If anything, the allegations made in the complaint directly contradict their unsupported claim of discrimination. For instance, they allege that the defendants told George "that whether or not Maggie assisted him with a disability was irrelevant," suggesting that his disability had no effect on their decision. Similarly, the Friedels allege that in Friedel I, Park Place claimed as an affirmative defense that George was lying about his disability "and only visited a doctor for an alleged

6

'handicap' after his animal attacked other animals and was banned from the park." Moreover, the Friedels never say that there were exceptions to the Park Place rules -- which plainly allow management to remove "[a]ny animal that displays dangerous or aggressive behavior, as determined by Management in its sole and unfettered discretion" -- nor do they say that the rules were applied differently to others.

Rather than offering support for the idea that Park Place discriminated against the Friedels because of George's disability, the pleadings reveal that the most likely reason Park Place issued its notice of eviction was because, on the day prior, Park Place prevailed in a jury trial.  The complaint plainly admits: "[O]n October 18, 2017, the day after the trial concluded, [defendants] served [the Friedels] with a '[statutory thirty (30) day notice to vacate].'"  As the Supreme Court has instructed, when a complaint's factual allegations are "not only compatible with, but indeed [are] more likely explained by," lawful activity, the complaint must be dismissed. Iqbal, 556 U.S. at 680.  The Friedels' allegations here are easily explained by Park Place's success in Friedel I, in which the jury accepted its affirmative defense that Maggie was a "direct threat" to the community.  Importantly, the defendants did not issue the eviction notice before the Friedel I jury verdict, when they were on notice of George's disability, but instead issued it the next day.  Thus, the complaint failed to allege facts to support a claim that the proximate cause of the notice to vacate was George's disability, and we affirm the dismissal of their FHA discrimination claim.

As for the Freidels' claim for failure to reasonably accommodate under § 3604(f)(3), a plaintiff with a disability within the meaning of the FHA or a person associated with that individual must show a "[1] refusal[] to make [2] reasonable accommodations in rules, policies, practices, or services, when such accommodations [3] may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]" Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218–19 (11th Cir. 2008) (quoting 42 U.S.C. § 3604(f)(3)(B)); see also Hunt, 814 F.3d at 1225-26 & n.9 (adopting the prima facie elements of a § 3604(f)(3) claim as pleading requirements). A qualified individual with a disability is "not entitled to the accommodation of [his] choice [or to his preferred accommodation], but only to a reasonable accommodation." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285–86 (11th Cir. 1997) (defining "reasonable accommodation" in the context of the American with Disabilities Act ("ADA")) (quotation omitted).[3] An accommodation is reasonable under the FHA if it is "both efficacious and proportional to the costs to implement it." Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1289 (11th Cir. 2014) (quotation omitted). The burden is on the plaintiff to show that the accommodation is reasonable on its face. U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 401–02 (2002).

---

[3] "[W]e look to case law under the [Rehabilitation Act] and the [American with Disabilities Act] for guidance on what is reasonable under the FHA." Schwarz, 544 F.3d at 1220.

Here, the Friedels failed to allege sufficient facts to show that their requested accommodation -- allowing Maggie to remain on the property -- was reasonable on its face. Indeed, the jury found in Friedel I that "no reasonable accommodation would have eliminated or acceptably minimized the risk Maggie posed to other residents." Moreover, while the Friedels now allege that Maggie received months of training and is no longer reactive, they fail to explain why having Maggie live on the property was "both efficacious and proportional to the costs to implement" the accommodation they seek. Bhogaita, 765 F.3d at 1289 (quotation omitted). As the pleadings reveal, the Park Place rules flatly bar Maggie from the property since she has displayed "dangerous or aggressive behavior" and the rules provide no exceptions that could make their accommodation reasonable. Further, after Park Place determined that Maggie posed a risk to the community, the Friedels did not promptly or forthrightly address that risk -- instead, they snuck Maggie back onto their property a few months after the January 2016 biting incident without any training, and then waited until about eighteen months later before claiming that Maggie had been trained. Nor is there any indication that they asked Park Place about acceptable training programs before claiming that her training was complete or that they otherwise pursued other alternative accommodations. By insisting that the only possible accommodation is for Park Place to allow Maggie to live with them, the Friedels are not seeking a reasonable accommodation but simply their

"preferred accommodation," which is not required under the law. See Stewart, 117 F.3d at 1285–86. Accordingly, because the Friedels failed to allege that the defendants refused to provide them with an accommodation that was reasonable, the district court did not err in dismissing this claim.

As for the Friedels' claim of retaliatory housing discrimination, we again are unpersuaded. The FHA provides that it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected" by the FHA discrimination provisions. 42 U.S.C. § 3617. In Sofarelli v. Pinellas County, 931 F.2d 718, 720, 722 (11th Cir. 1991), for example, we held that a plaintiff sufficiently made a claim under § 3617 by alleging that the defendants interfered with his efforts to move into a neighborhood on account of the plaintiff's race, which the plaintiff supported with "statements in the newspaper" that quoted the defendants "as stating that they had racial motivations for halting the house move."

The Friedels allege that their eviction was a direct result of both their initial suit against the defendants and their requests for accommodation. But the circumstances before us belie this conclusory allegation. The Friedels had received notice before they filed Friedel I that a potential consequence for refusing to remove Maggie from their home was eviction. Nevertheless, they secretly brought Maggie

10

back to their home.  Further, Park Place prevailed at trial in proving that Maggie was a dangerous animal to the community, and the post-<u>Friedel I</u> notice to vacate was consistent with the jury verdict.  See <u>Friedel</u>, 747 F. App'x at 776 ("A jury found that Park Place was excluded from having to make a dwelling available to Friedel because his dog's aggressive behavior posed a direct threat to the health and safety of other residents and their property.").  The Friedels never offer any allegation of retaliatory animus or other improper motive behind Park Place's notice of eviction.  Thus, we cannot say the Friedels sufficiently claimed that the defendants retaliated "on account of" <u>Friedel I</u> or the Friedels' requests for accommodation.  42 U.S.C. § 3617; <u>see also</u> <u>Sofarelli</u>, 931 F.2d at 722 (requiring a § 3617 plaintiff to establish that a protected ground "played some role in the actions of" the defendants).

      The Friedels' final claim is for "breach of the coven[an]t of good faith and fair dealing and/or tortious interference with contract" under Florida law.  "While every contract contains an implied covenant of good faith and fair dealing under Florida law, a breach of this covenant -- standing alone -- does not create an independent cause of action." <u>Resnick v. AvMed, Inc.</u>, 693 F.3d 1317, 1329 (11th Cir. 2012) (quotation omitted).  Rather, it must "relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." <u>Ins. Concepts & Design, Inc. v.</u>

11

Healthplan Servs., Inc., 785 So. 2d 1232, 1235 (Fla. Dist. Ct. App. 2001) (per curiam) (emphasis and quotation omitted).  As we've noted, "[a] claimant asserting a cause of action for breach of the implied covenant must allege a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party." Resnick, 693 F.3d at 1329 (quotation omitted).

The Friedels have not stated a claim for the breach of the implied covenant of good faith and fair dealing because they failed to identify the specific contractual obligation breached by the defendants to which the breach of the implied covenant would attach.  Rather, the Friedels merely take the position that the breach was of the entire "lease itself." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005) ("A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation.").  Because Florida law requires plaintiffs to identify the express portion of the lease agreement that was breached, the Friedels' claim necessarily fails.

What's more, even if the Friedels were able to assert a breach of the "lease itself," they did not do so.  No provision within the lease prohibits Park Place or Sun Communities from requiring removal of an animal from the property after a jury has

12

deemed the animal to be a danger and threat to the community. In fact, the opposite is true. As we've detailed, the lease agreement incorporated Park Place's Rules, which prohibited dangerous or aggressive pets and required their removal from the premises; the lease agreement further provided that violation of the rules "shall be grounds for eviction from the park." Park Place and Sun Communities acted well within the express terms of the Friedels' lease. Accordingly, the Friedels failed to state a claim for breach of the implied covenant of good faith and fair dealing.

Likewise, the Friedels failed to state a claim for tortious interference with a business relationship. The elements of this claim are: "(1) the existence of a business relationship . . . [;] (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994) (quotation omitted). The Friedels failed to allege sufficient facts to show that the alleged interference -- the eviction -- was unjustified. As we've explained many times, the facts alleged support a finding that the defendants' actions were justified: the jury found that Maggie was a dangerous animal and threat to the community and the Friedels refused to remove Maggie from the property.

**AFFIRMED.**[4]

---

[4] The Friedels' motion to file a reply brief out of time is granted.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 24, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 20-12275-DD
Case Style: George Friedel v. Sun Communities Inc., et al
District Court Docket No: 2:19-cv-14394-RLR

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1.

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Bradly Wallace Holland, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs