UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-CV-14394-ROSENBERG/MAYNARD

GEORGE FRIEDEL &
KATHLEEN FRIEDEL,

        Plaintiffs,

v.

SUN COMMUNITIES, INC.,

        Defendant.
_____/

### PLAINTIFFS' *CORRECTED*[1] RESPONSE IN OPPOSITION TO AMENDED MOTION FOR SANCTIONS

*Summary of Response*

This is a case brought under the Fair Housing Act ("FHA") for which Defendants seek sanctions under 28 U.S.C. § 1927.

In the 11th Circuit, "[s]ection [1927] is not a 'catch-all' provision designed to serve as a basis for sanctioning any and all attorney conduct courts want to discourage;" nor is it an evaluation of whether an attorney could or should have done differently than she did.[2] It "applies only to conduct that 'multiplies the proceedings in any case **unreasonably *and* vexatiously**.'"[3] **Conduct rises to such level "only when the attorney's conduct is so egregious that it is tantamount to bad faith**."[4] Conduct such as "stealing confidential business records,"[5] fabricating the existence of claimants or filing 588 lawsuits in the names of living smokers who had already died,[6] qualify; zealous representation, as in the case *sub judice*, does not.

**This is not a sanctions case.**

---

[1] Corrected to address an incompletion.
[2] *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).
[3] *Id.* (emphasis supplied).
[4] *Eldredge v Edcare Mgmt., Inc.*, No. 17-14821, 12 (11th Cir. Mar. 19, 2019)(per curiam), quoting *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010). See also *Amlong & Amlong, P.A. v Denny's Inc.,* 500 F.3d 1230, 1239 (11th Cir. 2007) (emphasis added).
[5] *Id.*
[6] *In re Engle Cases*, 283 F. Supp. 3d 1174, 1215, 1226 (M.D. Fla. 2017).

Moreover, § 1927 is penal in nature and contrary to the express purpose of the FHA.

Defendants broad sweep the existence and conduct in a related case brought by one attorney to conduct in the instant case brought by two different attorneys arising from events that had not yet even occurred. Interconnectedness does not transmute to "unreasonable and vexatious."

**This is not a sanctions case.**

## I.  BACKGROUND[7]

On October 6, 2019, George Friedel and Kathleen Friedel ("Plaintiffs") filed a Complaint against Defendant Sun Communities, Inc. ("Sun") through their legal counsel, Venza Law, PLLC and Marcy I. LaHart, PA [DE 1]. The Complaint alleged four causes of action under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*: (1) making a dwelling unavailable because of a handicap; (2) failure to grant a reasonable accommodation; (3) illegal retaliation; and (4) breach of covenant of good faith and fair dealing (interference with contract). *Id.*

Central to all allegations was that Sun illegally retaliated against *both* George and Kathleen Friedel by evicting them *after* George Friedel[8] singularly filed and litigated a prior lawsuit against Park Place Community, LLC ("Park Place"). *Id.* at ¶¶ 66 through 70. In the instant case, *both* George and Kathleen Friedel sought damages associated with that retaliatory eviction. *Id.* Notably, the retaliatory eviction which is the subject of the within lawsuit had not yet occurred and thus was not a part of George Friedel's singular lawsuit.

Defendant Sun moved to dismiss, contending that Park Place was an indispensable party [DE 14]. The Court granted the Motion "*to the extent it argues Park Place should be joined in this action*" **and ordered** the Plaintiffs to immediately "*serve and join Park Place,*" which Plaintiffs

---

[7] Plaintiffs expressly incorporate herein their contemporaneously-filed *Corrected* Response in Opposition to Defendants' Amended Motion for Attorney's Fees and Costs. However, because the facts are critical to Section 1927 analysis, they bear repeating here.

[8] George Friedel was represented by Marcy I. LaHart, PA.

2

did. [DE 25 and DE 26, respectively]. It bears noting that in its fact-finding the Court denominated the within litigation "*Friedel II*" and the predecessor lawsuit "*Friedel I*," but erroneously reported that "*Friedel II concerns the same Plaintiffs, the same eviction, and it is filed by the same counsel.*" DE 25 at 2. However, Kathleen Friedel was not a party to Friedel I, the retaliatory eviction which was the subject of the within, Friedel II, litigation had not yet occurred and thus could not have been a part of Friedel I, and Venza Law, PLLC, Plaintiffs' current counsel, was not involved in Friedel I.

On March 16, 2020, pursuant to the Court's express dictates to do so, the Plaintiffs filed an Amended Complaint[9] adding Park Place as a named party [DE 27]. Defendants Sun and Park Place jointly moved to dismiss the Amended Complaint, and alternatively, "for More Definite Statement." [DE 30]. In Defendants' Reply [DE 32] to Plaintiffs' Response in Opposition [DE 31], Defendants challenged Plaintiffs' ability to pierce the corporate veil between Sun and Park Place and contended that Plaintiffs' retaliation claim was "speculation because Defendants' actions [of evicting both Plaintiffs after George Friedel litigated against Park Place] ha[d] a clear non-discriminatory basis" [DE 32 at 1, *et seq.*]. Plaintiffs' request to file a Sur-Reply to these challenges was denied [DE 34].

In the interim and long before the ruling on the first Motion to Dismiss, Plaintiffs served discovery on Sun, which, after three extensions so that Sun could ostensibly gather responsive material, Sun failed to substantively answer. On May 5, 2020, a Discovery Conference was held at which Defendants' counsel represented that discovery was "on track." On May 7, 2020, however, the third extended deadline for document production, Defendant Sun served discovery

---

[9] The pleading is denominated "Second Amended Complaint," but that was in name only; the initial complaint was amended to correct a scrivener's errors before it was served.

responses comprised of boilerplate objections to virtually every Interrogatory, produced not a single document, and failed to produce a requisite privilege log. See Plaintiffs' Motion [to Compel] [DE 39] which Plaintiffs expressly incorporate herein.[10]

On May 18, 2020, Plaintiffs filed a Motion [to Compel] [DE 39]. On May 19, 2020, the next day, the Court entered its Order granting Defendants' Motion to Dismiss the Amended Complaint [DE 40] (and mooting the Plaintiff's Motion to Compel).

On May 29, 2020, Defendants filed their original Motion for Sanctions ("Original Sanctions Motion") [DE 42]. On June 12, 2020, Plaintiffs filed their Response in Opposition to Defendants' Motion for Sanctions [DE 43] delineating the Original Sanctions Motion's deficiencies (including, *inter alia*, the failure to comport with Local Rules 7.1 and 7.3 *in toto*).[11] As a direct result, Defendants' voluntarily withdrew their Original Sanctions Motion on June 19, 20201. Notice of Withdrawal of [Original Sanctions] Motion [DE 46].

On June 18, 2020, the case was appealed and a Notice of Appeal was filed [DE 45].

On July 16, 2020, Defendant's filed their Amended Motion for Attorney's Fees [DE 49] ("Amended Sanctions Motion"). On July 21, 2020, the Court entered a Paperless Order terminating the Amended Sanctions Motion and stating "[a]ny party may move for the [Amended Sanctions Motion] to be reinstated after the conclusion of the pending appeal." [DE 50.]

On September 22, 2021, the Mandate certifying the Appeals Court's ruling was filed [DE 52], officially concluding the appeal. On October 22, 2021, Defendants' filed their Motion to

---

[10] After counsel's additional efforts, Sun later produced Amended Responses with documents, however, they were form and not substance. See [DE 39]. The multiple extensions and Defendant Sun's failure to provide a response to an Interrogatory other than boilerplate objection, initial failure to provide a single document in response to a Request to Produce or privilege log, and non-substantive supplementation, are all germane to the unreasonableness of the amount of attorney's fees sought, as discussed *infra*. *Id*.

[11] E.g., was not verified, did not state the amount sought, did not provide the identity, experience, or qualifications for each timekeeper, did not identify the number of hours reasonably expended, did not describe the tasks done, did not identify hourly rates, etc.

4

Reinstate [DE 53] both the Defendants' Amended Fees Motion [DE 48] and the Amended Motion for Sanctions [DE 49]. That same day the Court, again through Paperless Order, granted the request for reinstatement [DE 54].

## II. MEMORANDUM OF LAW

**A. § 1927 HAS BEEN DESIGNATED BY THE SUPREME COURT AS "PUNITIVE" AND DECLARED BY THE 11th CIRCUIT "PENAL," THE VERY NATURE OF WHICH CONFLICTS WITH AND IS THUS PRECLUDED BY THE FHA.**

The Supreme Court cautions District Courts' utilization of § 1927 sanctions in any context, given their punitive nature. See generally *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1382 (5th Cir. 1979), *aff'd sub nom. Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980).

In *Hall v Cole*, 412 U.S. 1, 5 (1973), the Supreme Court explained:

> It is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons…' In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant.

A fee award under the bad faith exception requires subjective bad faith, i.e., "some proof of malice entirely apart from inferences arising from the possible frivolous character of a particular claim." *Copeland v Martinez,* 603 F.2d 981, 991 (D.C. Cir. 1979), *cert. denied,* 444 U.S. 1044 (1980). In the instant case, Defendants make no claim of subjective bad faith nor do they offer any "proof of malice entirely apart from inferences arising from the possible frivolous character of a particular claim." *See* Amended Motion for Sanctions [DE 49].

The Eleventh Circuit has held that § 1927, "being penal in nature, must be strictly construed." *Peterson v. GMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997). And in the Civil Rights context, such as litigation over disability discrimination *a la* the case *sub judice*, it is even more frowned upon.

The instant case was a lawsuit brought on the basis of disability discrimination and violation of Civil Rights under the Fair Housing Act ("FHA"). [DE 1.] "Congress intended the FHA to protect the right of handicapped persons to live in the residence of their choice in the community." *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 806 (8th Cir. 1994), aff'd 514 U.S. 725 (1995). See also *Warren v. Delvista Towers Condo. Ass'n, Inc.*, 49 F. Supp. 3d 1082, 1089 (S.D. Fla. 2014) (the "clear and manifest purpose of Congress" was to provide disabled individuals with equal use and enjoyment of their dwelling).

That the imposition of sanctions or the award of fees might have a chilling effect on cases being brought by and on behalf of those that suffer housing discrimination based upon race, national origin, or disability – the very antithesis of the FHA's clear and manifest purpose – cannot (and should not) be ignored.

**B.     ONLY CONDUCT AFTER THE SECOND AMENDED COMPLAINT WAS FILED IS SUBJECT TO SCRUTINY SECTION 1927 SCRUTINY.**

PART IV A. § 1927 Title 28, United States Code, § 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 [hereafter "Section 1927"].

This statutory language imposes three requirements for the imposition of sanctions:

> First, the attorney must engage in 'unreasonable and vexatious' conduct. Second, that 'unreasonable and vexatious' conduct must be conduct that 'multiplies the proceedings.' Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the 'costs, expenses, and attorneys' fees reasonably incurred because of such conduct.'

*Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997).

6

Critically, "Section 1927 only applies to unreasonable conduct **after** the lawsuit has begun." *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006) (emphasis added). "[Section] 1927 covers only the multiplication of 'the proceedings in any case'…This unambiguous statutory language necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until **after** those proceedings have begun." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1224–25 (10th Cir. 2006) (emphasis in original); accord *Prosser v. Carroll* (In re Prosser), Case No. 06-30009 (JFK) (D.V.I. Feb. 14, 2014). In short, Section 1927 only applies to unreasonable conduct after the lawsuit has begun. See *id.*

In the case *sub judice,* this means that scrutiny for Section 1927 unreasonableness and vexatiousness applies only to conduct **after** the Second Amended Complaint was filed. Contrary to Defendants' mischaracterization that "[n]otwithstanding the language in this Court's Order, Plaintiffs' counsel continued down the same road and filed a Second Amended Complaint…" (Motions for Sanctions [DE 49] at 1), counsel filed a Second Amended Complaint because it was the Court's directive to do so. Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [DE 25]. While *not* obeying a Court's Order may – in certain circumstances – merit Section 1927 sanctions, obeying a Court's Order cannot.

Moreover, the Court ordered that Defendant Park Place be added as a party at Defendants' express behest. [DE 14.] Park Place's additur influenced and otherwise impacted proceedings thereafter.

Defendants seek to exploit the Court's ruling of dismissal. Such is the antithesis of FHA law and contrary to 28 U.S.C. § 1927:

> § 1927 sets "an 'extreme standard,' and fees should be awarded 'only in instances evidencing a serious and standard disregard for the orderly process of justice.'" Baca v Berry, 806 F.3d 1262, 1268 (quoting *AeroTech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir. 1997) (internal quotation marks omitted)). Courts "'must

7

strictly construe[ ]' the statute to guard against 'dampen[ing] the legitimate zeal of an attorney in representing his client.'" *Id.* (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc)).

*Gutierrez v. Cobos*, Civ. No. 12-980 JH/GBW, 10 (D.N.M. Jun. 22, 2016), citing and quoting *Baca v. Berry*, 806 F.3d 1262 (10th Cir. 2015), which cited, quoted, and relied heavily upon *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

Regardless, for the reasons explained in detail *infra*, Plaintiffs' counsel submits that none of their conduct, irrespective of time frame or activity, rises – or, more aptly, descends – to a level of "unreasonable and vexatious."

C. **THE CONDUCT PROFFERED BY DEFENDANTS AS JUSTIFICATION FOR THE IMPOSITION OF SECTION 1927 SANCTIONS IS WOEFULLY MISCHARACTERIZED; EVEN IF WEREN'T, IT DOES NOT DESCEND TO A LEVEL OF "UNREASONABLE AND VEXATIOUS"**

"Section [1927] is not a 'catch-all' provision designed to serve as a basis for sanctioning any and all attorney conduct courts want to discourage." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Nor is it an evaluation of whether an attorney could or should have done differently than s/he did. *Id. Tobinick v. Novella,* 207 F. Supp. 3d 1332, 1343-44 (S.D. Fla. 2016)("An attorney's conduct is unreasonable and vexatious 'only when the attorney's conduct is so egregious that it is tantamount to bad faith.'" citing *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1262 (11th Cir. 2007). That is, "the attorney *must knowingly or recklessly* pursue a frivolous claim...Negligent conduct, standing alone, will not support a finding of bad faith under § 1927....[S]omething more than lack of merit is required." *Id.* (emphasis in the original).

A finding of bad faith is appropriate only "where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). When

8

critically examined, the Amended Sanctions Motion [DE 49] amounts to nothing more than Defendants' disputation that Plaintiffs' counsel should have done differently than what was done

None of Plaintiffs' counsel's conduct was wrongful, egregious, in bad faith, vexatious, or unreasonable. The standard is not success, or else fees would be awardable against the losing side in all cases. A party is entitled to assert its claim, and counsel has a duty to advocate in good faith in support of a clients' claims. The Defendants have provided no evidence that counsel acted in bad faith. The Amended Motion for Sanctions [DE 49] should be denied on the merits.

Defendant Sun moved to dismiss, contending that Park Place was an indispensable party [DE 14]. The Court granted the Motion "*to the extent it argues Park Place should be joined in this action"* **and ordered** the Plaintiffs to immediately "*serve and join Park Place*," which Plaintiffs did. [DE 25 and DE 26, respectively].

Section 1927 fees must meet a "bad faith" level of conduct. The Eleventh Circuit has held that Section 1927 "allows" attorneys' fees to be assessed against counsel "who willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motor Co., Ltd*., 987 F.2d 1536, 1544 (11th Cir. 1993) (internal quotation omitted). *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225-26 (11th Cir. 2003) ("To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct…'Bad faith' is the touchstone. Section 1927 is not about mere negligence."). *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power [to impose sanctions] is a finding of bad faith.").Conduct is "unreasonable and vexatious" "only when [it] is so egregious that it is tantamount to bad faith." *Eldredge v Edcare Mgmt., Inc.*, No. 17-14821, 12 (11th Cir. Mar. 19, 2019)(per curiam), quoting *Norelus v. Denny's,*

*Inc.*, 628 F.3d 1270, 1280 (11th Cir. 2010). Conduct such as "stealing confidential business records,"[12] fabricating the existence of claimants or concealing that they have died [13] qualify; zealous representation, as in the case *sub judice*, does not. This is not a sanctions case.

"Colorable arguments" are not such conduct. *Waymark Corp. v. Porta Sys. Corp.*, 334 F.3d 1358, 1365 (Fed. Cir. 2003). Even when a case is before a district court a second time. See *id.* (noting that it had already found that "[t]he appellants also had a colorable argument for infringement under § 271(a)" referring to *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001) when denying Section 1927 sanctions the second time the case was before it).

> In order for Section(s) 1927 to be applicable, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings. Under the plain statutory language, objectionable conduct — even 'unreasonable and vexatious' conduct — is not sanctionable unless it results in proceedings that would not have been conducted otherwise.

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). It is not a "catch-all" provision for sanctioning objectionable conduct by counsel. *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).

"[Section] 1927 'targets conduct that multiplies the proceedings, which, when 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1226 (10th Cir. 2006) (quoting *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (internal quotation marks omitted)). Examples include cases in which the attorney: acts recklessly or with indifference to the law; is cavalier or bent on misleading the court; intentionally acts without a plausible basis; or causes unjustified discovery for the improper purposes of harassment, unnecessary delay, or to increase costs. *Baca v. Berry*, 806 F.3d 1262, 1268 n.3 (10th Cir. 2015). at 1268 n.3; see *Miera*, 143 F.3d at 1342.

---

[12] *Id.*
[13] *In re Engle Cases,* 283 F. Supp. 3d 1174 (M.D. Fla. 2017).

*Baca v Berry*, 806 F.3d 1262 (10th Cir. 2015), was analyzed as to why Section 1927 sanctions were awarded and limited in *Steinert*:

> In *Steinert*, the plaintiff's attorney "embarked on a five-month extension-seeking campaign," requesting a total of at least **thirty-four extensions** to file various pleadings and citing at least eleven different types of excuses. *Id.* at 1217-18. After reviewing the entire course of the litigation, the district court found a pattern of inexcusable neglect. *Id.* at 1218. The district court then cautioned the attorney that failure to comply with a forty-eight-hour deadline might result in an order that the plaintiff or the attorney pay costs and attorney's fees. *Id.* The attorney later conceded that a § 1983 claim failed for lack of state action, and argued for liability under § 1985 (later dismissed for failure to state a claim). *Id.* at 1219-20. The attorney "then embarked on another extension-seeking campaign," citing an extensive variety of excuses. *Id.* at 1219. The attorney ultimately moved to dismiss the case with prejudice, citing his client's financial inability to continue. *Id.* at 1220. The district court ordered an award of fees under § 1927 based on: (1) the attorney's moving forward with § 1983 and § 1985 claims, lacking clear legal basis, which the court found had multiplied the proceedings, had resulted in an increase in cost, and was unreasonable and vexatious; and (2) the attorney's requested extensions, which the court found had multiplied the proceedings by about 495 days and had unreasonably and vexatiously increased the costs. *Id.* at 1220-21. The district court sanctioned the attorney for $20,677. *Id.* at 1221.
>
> The Tenth Circuit affirmed in part, ruling that the district court had abused its discretion in awarding sanctions partly based on initiating meritless claims rather than only on subsequently continuing to advance meritless claims. *Id.* at 1225-26. In affirming, the Tenth Circuit observed that the district court had cautioned the attorney that his conduct could lead to sanctions. *Id.* at 1222. **Steinert holds that § 1927 is available to punish excessive extension requests—detailing an extraordinary number of such requests, with various reasons given, and with the "primary factors" having been deceptively concealed from the district court, according to the attorney's own later statement.** *Id.* at 1226. The Tenth Circuit affirmed the district court's conclusion that the numerous and predominantly untimely extension requests met the § 1927 standard. *Id.*

*Gutierrez v. Cobos*, Civ. No. 12-980 JH/GBW, 11-12 (D.N.M. Jun. 22, 2016) (emphasis added).

In this case, even if all conduct proffered by Defendants occurred as claimed or can be construed under the color Defendants urge, the standard is "unreasonable ***and*** vexatious." Plaintiffs' counsel ardently disputes that any of their conduct was either unreasonable **or** vexatious, and urges this Court to look at counsel's conduct in *In re Engle Cases,* 283 F. Supp. 3d 1174 (M.D.

11

Fla. 2017), from the Middle District as the barometer for what conduct actually qualifies as so in the Eleventh Circuit. This is not a sanctions case.

D.  **THE REAL FACTS AND PROCEDURAL HISTORY.**

Defendants proffer in support of Section 1927 sanctions boils down to five (5) grounds: (1) the within lawsuit is duplicative of predecessor litigation (litigation Defendants concede was neither frivolous nor meritless")[14]; (2) the original pleading in this lawsuit did not "mention" the "jury trial or the jury verdict" in predecessor litigation [DE 49 at ¶¶ 7-8]; (3) the within lawsuit was dismissed [DE 49 at 3-4]; (4) Plaintiffs sought punitive damages and attorney's fees (which Defendants deceptively albeit colorfully described as "brandished the specter of punitive damages and attorney's fees" [DE 49 at 5]); and (5) Plaintiffs' filed a Motion to Compel [DE 49 at 5]. None of these grounds are valid, and most are untrue or are otherwise misleading as characterized.

**(1)  the within lawsuit is neither duplicative nor derivative of predecessor litigation**

The within case is not duplicative of the 2017 Lawsuit, nor is it truly "derivative" of the 2017 Lawsuit. Although related, "it does not owe its existence to something foregoing"; it exists independently. *Cf.* Black's Law Dictionary, https://thelawdictionary.org/derivative/.) Even if the 2017 Lawsuit had never been filed, the within lawsuit could have been.

Of significant import, however, and is that Defendants concede that the 2017 Lawsuit was neither frivolous nor meritless. [DE 49 at 6.]

On February 19, 2017, Plaintiff George Friedel filed suit against Defendant Park Place for discrimination under the Fair Housing Act ("FHA") [hereafter "2017 Lawsuit"].

---

[14] Even though "Park Place prevailed" in the 2017 Lawsuit and the case was appealed to the 11th Circuit Court of Appeals "it could not be said that the filing of the [2017 Lawsuit] was frivolous or without merit." [DE 49 at ¶ 23.]

At issue in the 2017 Lawsuit was, *inter alia*, whether Mr. Friedel had a disability, whether his dog was an emotional support animal, whether Park Place made Mr. Friedel's dwelling unavailable because of his disability, and whether the dog posed a direct threat to the community. See DE 27-3. Again, contrary to the Court's statement and Defendants' reiteration of that statement, **the within litigation does not concern "the same Plaintiffs, the same eviction" nor is it "filed by the same counsel."** Amended Sanctions Motion at ¶ 3 [DE 49], quoting Court's Order [DE 25].

Plaintiff Kathleen Friedel was not a party to the 2017 Lawsuit. Her independent claims against the Defendants, either of them, were never filed. Moreover, at the time of the 2017 Lawsuit and its pendency, her personal expulsion had not yet even occurred and thus was not, and could not, have been part of the 2017 Lawsuit.

Similarly, as acknowledged by the Defendants, the 2017 Lawsuit involved an eviction limited to and "arising from events that took place **prior to**…February 19, 2017," i.e., the date the 2017 Lawsuit was filed. See Defendant Park Place's Motion in Limine at 3, Case No. 2:17-cv-14056-RLR [DE 25] (07/17/2017). The instant litigation is based upon events that occurred **after** that date.[15] See DE 5 and 27.

Finally, Venza Law, PLLC was not Plaintiff George Friedel's counsel nor involved in any way in the 2017 Lawsuit, and only Attorney Brian Chase is counsel for Defendants in this case.

---

[15] Namely, Defendant Sun's refusal to grant Mr. Friedel's second request for accommodation made only after his dog had received months of behavioral modification training and the training had been deemed successful, Defendant Sun's complete failure to engage in dialogue regarding the second, distinct request for accommodation, and Defendant Sun's election to evict Plaintiffs notwithstanding Defendant Sun's knowledge regarding the successful behavioral modification training. Such conduct is even more egregious in the face of a jury determination that Mr. Friedel does, in fact, suffer disabilities as the term is defined under the FHA, and that his dog did, in fact, ameliorate the impact of his disabilities.

13

Bottom line: the within case does not involve the same parties, the same claims, or the same counsel. While there is overlap, overlap alone does not automatically vitiate a case or a plaintiff's claim. For example, if an individual declines to join a class action suit, his or her claims are not foreclosed; the individual is still free to bring his or her own lawsuit, independently. Federal Rule of Civil Procedure 20 leaves a plaintiff's joinder to such an action optional. Fed. R. Civ. P. 20(a).

And even Federal Rule of Civil Procedure 19, which was available to but was not invoked by Defendant Park Place in the 2017 Lawsuit, did not mandate Mrs. Friedel's inclusion in that suit. See Fed. R. Civ. P. 19.

### (2) the first pleading in this lawsuit did not "mention" the 2017 Lawsuit (i.e., the "jury trial or the jury verdict" in predecessor litigation)

Procedurally, the original Complaint [DE 1] in the within litigation was never served. Plaintiff **Kathleen** Friedel was inadvertently referred to as "**Katherine** Friedel," an error which was corrected in the "First Amended Complaint" [DE 5] and before the original Complaint was filed or served, making the "First Amended Complaint" the "first" Complaint to the Defendants and Court (i.e., the scrivener's error).

As the Court and the Defendants are aware, it has been Plaintiffs' position that the distinction between Defendant Park Place and Defendant Sun can be a matter of what best serves Defendants' interests at the moment, a position Plaintiffs have been thwarted from proving due to Defendant Sun's stonewalling of discovery and the ill-timing of the Court's Order dismissing the instant litigation. See Plaintiffs' Motion [to Compel] [DE 39]; Order [DE 40].

Plaintiffs' counsel named Sun Communities as the Defendant in this action based upon Park Place's corporate representatives' disavowal of any responsibility for deciding whether Mr. Friedel would be precluded from being able to live with his assistance animal in the 2017 Lawsuit,

14

which involved pre-February 19, 2017, conduct. Park Place's chosen corporate representative, Megan Bunting, testified that Sun Communities makes the policies for Park Place. Bunting Deposition Transcript at 9:24-10:2 (excerpts are marked and attached collectively as "Exhibit 1"). She also testified that Sun's polices apply to Park Place and all of Sun's properties *Id.* at 25:4-18.

Similarly, Park Place's Manager, Patty Jamar, testified that it was not up to her whether an allegedly aggressive assistance animal had to be removed from the community, but rather that it was up to Sun Communities' "risk management department." Jamar Deposition Transcript at 13:7-23 (excerpts are marked and attached collectively as "Exhibit 2"). Jamar further testified that Park Place did not have its own animal assistance policy, but followed Sun Communities' policy. *Id.* at 23:11-20. The decision to name Sun Communities as the Defendant was not based upon nefarious motive, but rather the uncontradicted testimony of Park Place's employees.

In their quest for sanctions, Defendants contort and outright misrepresent what *In re Engle Cases,* 283 F. Supp. 3d 1174 (M.D. Fla. 2017), was about and held, citing it as fodder for the argument that the filing of the First Amended Complaint in the instant matter constitutes "unreasonable and vexatious" conduct because it did not reference "the jury trial or the jury verdict" in the 2017 Lawsuit:

> An attorney may be held liable for bringing a duplicative complaint which fails to reference or disclose that the claim was previously adjudicated, even if that attorney later does not oppose a motion to dismiss the complaint. *See*, *Engle*, 283 F. Supp. 3d at 1227. In this case, 'Plaintiffs' Amended Complaint does not cite *Friedel I* in any way. Plaintiffs make no mention of the jury trial or the jury verdict in *Friedel I*. Nor do Plaintiffs reference the jury finding that their dog was a dangerous animal.' [Doc. 25, p. 2, Ord. Granting Mtn. to Dismiss].

Amended Sanctions Motion at ¶¶ 7-8 [DE 49]. The *In re Engle* facts, and thus the consequential ruling, couldn't be more disparate from the matter under review:

> Between 2011 and 2013, the Court learned that Counsel had filed dozens of Frivolous Actions (in addition to the 588 Actions). Counsel brought these Frivolous Actions without authorization or on behalf of non-smokers, people who

15

> never lived in Florida, and plaintiffs with previously adjudicated claims. The fatal defects in these actions surfaced not through voluntary disclosures from Counsel, but through alerts from Defendants, the hard work of the Temporary Special Master, and from the returned Court Questionnaires. Before the Court Questionnaire process, Counsel vigorously opposed any suggestion that someone should interview or question the plaintiffs. Counsel's intransigence forced the Court to order Wilner to mail the Court Questionnaires to 2,661 plaintiffs and to have the Temporary Special Master review the results. The questionnaire process was time-consuming but necessary. It accomplished what Counsel would not: the identification of hundreds of frivolous cases, and the segregation of viable from non-viable claims.

*In re Engle,* 283 F.Supp.3d at 1225-1226. The undersigned takes personal umbrage to Defendants' counsel's insinuation that the conduct in the within litigation in any way remotely resembles or is on par with that of the claimant-fabricating and claim-inventing counsel's in *In re Engle*.

Unlike *In re Engle*, Defendants' counsel and this Court were more than aware of the 2017 Lawsuit and related litigation, including the trial and verdict. Whether the "jury trial" and/or "jury verdict" were or were not expressly mentioned in the First Amended Complaint is of no dispositive consequence given this inarguable knowledge.

In the context of this case and all circumstances attendant to it, the argument that the failure to mention "jury verdict" or "jury trial" in the First Amended Complaint substantiates Section 1927 sanctions is frivolous. That the omission renders Plaintiffs' counsel's conduct on par with that under review in *In re Engle*, is specious at best.

### (3) that the within lawsuit was dismissed is not proof it was "frivolous" nor is it dispositive to analysis of Section 1927 sanctions

Defendants maintain that the Court's dismissal of the Second Amended Complaint is, in and of itself, a statement that the within litigation is frivolous and grounds for Section 1927 sanctions. See DE 49 at 2; 3. However, nowhere in the Order Granting Defendants' Motion to Dismiss does the Court declare the Plaintiffs' within lawsuit or the subject pleading "frivolous." See DE 40.

Moreover, in the Eleventh Circuit when determining whether a claim is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1189 (11th Cir. 1985) (quoting *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir. 1981)). *Cf.* DE 40. "Those claims dismissed on 12(b)(6) motions that receive 'careful consideration,' especially as evidenced by lengthy, detailed, and reasoned orders or opinions, are not 'groundless' or 'without foundation.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995). Given the scrutiny and nine-pages dedicated to this Court's Order of dismissal [DE 40], the claims in this case cannot be construed as such.

This is not a sanctions case.

**(4)     that Plaintiffs' counsel included a demand for those damages expressly enumerated by the federal law under which the claims were brought is not only *not* evidence of "unreasonable and vexatious" conduct, but was Plaintiffs' counsel's protection from malpractice**

This lawsuit was brought under the FHA which expressly provides for an award of punitive damages and attorney's fees. 42 U.S.C. §§ 3604; 3617. In furtherance of the representation of their clients in an "illegal retaliation" case, it was Plaintiffs' counsel's duty to assert same in the scope of that representation and to develop facts in support. Describing Plaintiffs' counsel's pursuit of statutory damages as "brandish[ing] a specter" is, at a minimum, generous poetic license. To assert same as evidence of "unreasonable and vexatious" conduct for imposition of Section 1927 sanctions is spurious.

Punitive damages are authorized when a Defendant in a fair housing case acts with reckless indifference to a Plaintiff's rights under the FHA. *Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, No. 12-60691-CIV, 2014 WL 988767, at *24 (S.D. Fla. Mar. 13, 2014). The essence of the within lawsuit was that Defendant Sun retaliated upon George and Kathleen Friedel

for George Friedel having exercised his fair housing rights when he filed the 2017 Lawsuit. A housing provider is liable for punitive damages when it "discriminate[s] in the face of a perceived risk that its actions violated federal law.") *Id.* at 32. Plaintiffs' claim for punitive damages is not without basis.

**(5)    that Plaintiffs' filed a Motion for Rule 37 Sanctions/to Compel is dispositive of nothing but Defendants' retaliatory motivation in filing the subject Amended Motion for Sanctions**

Defendants criticize the scope, breadth, and nature of the discovery requests Plaintiffs' counsel propounded (and which Defendant Sun avoided). [DE 49.] However, Defendant Sun never filed a Motion for Protective Order, but instead sought multiple extensions before ultimately serving incomplete responses with boilerplate objections and claim of privilege for which no privilege log was provided. See Amended Sanctions Motion [DE 49] at 5-6; and see Plaintiffs' Motion for Rule 37 Sanctions and to Compel Defendant Sun's Immediate Provision of Complete, Substantive Discovery Responses (Including Privilege Log If Not Already Waived) and Memorandum of Law in Support [DE 39] ("Motion to Compel"].

If the disputed discovery requests were truly as "oppressive and burdensome" as claimed, Defendant Sun would have challenged them from the outset. It did not. To make the Monday-morning-quarterback claim of "oppressive and burdensome" now, when endeavoring to establish grounds for Section 1927 sanctions, smacks of retaliation and lacks credibility. See, e.g., *NCC Bus. Servs., Inc. v. Lemberg & Assocs., LLC*, No. 3:13-CV-795-J-39MCR, 2015 WL 5553773, at *6 (M.D. Fla. Sept. 18, 2015) (denying sanctions where plaintiff's efforts to conduct discovery where not indicative of bad faith or multiplying the proceedings).

In further support of Defendants' efforts to have the Court construe Plaintiffs' counsel's filing of a well-based and thoroughly substantiated Motion to Compel as evidence of

18

"unreasonable and vexatious" conduct, Defendants quote an unidentified speaker and an unsubstantiated statement which they denominate an "admission" by "Plaintiffs' counsel" that the discovery requests propounded were without purpose. Amended Sanctions Motion at ¶ 21 [DE 49]. .(Specifically, Defendants' claim "Plaintiffs' counsel" said "I doubt either side will learn much in discovery it did not already know." *Id*.) Given that the discovery requests included interrogatories and production requests dedicated specifically to the issue of Defendant Park Place's and Defendant Sun's corporate relationship, an issue as discussed *supra* which became critical to the within litigation, Defendants' contention, citation, and quotation are suspect.

Moreover, Defendants claim this "admission" occurred on May 1, 2020. *Id.* However, no correlating time entry for May 1, 2020, has been proffered. See DE 48-1 and DE 48-2. The only time entries for activity on May 1st are from the Jaffe Firm: one entry by a timekeeper who is not counsel of record and had no contact with Plaintiffs' counsel and the other by a paralegal (who also had no contact), for activities not remotely construable as communicating with "Plaintiffs' counsel":

| 05/01/2020 | 886 | BENJAMIN M. LOW | | 0.60 | 123.00 | REVIEW EMAIL SEARCH PARAMETERS, CORRESPONDENCE | S |
| 06/03/2020 | | Invoice=461470 | | 0.60 | 123.00 | RE: DISCOVERY | |
| 05/01/2020 | 767 | JULIE A NORTON | | 1.40 | 322.00 | REVIEW AND ANALYZE INITIAL SUN EMAIL SEARCH | S |
| 06/03/2020 | | Invoice=461470 | | 1.40 | 322.00 | RESULTS AND COMMUNICATIONS WITH THE TEAM | |

DE 48-2. This unsupported, unsubstantiated "admission" exemplifies the speciousness of Defendants' claim for Section 1927 sanctions.

### III. REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiffs request an in-person hearing. "[A]n attorney threatened with sanctions under 1927 is entitled to a hearing." *Amlong & Amlong. P.A. v. Denny's. Inc*., 500 F.3d 1230, 1242 (11th Cir. 2007).

19

IV. CONCLUSION

**This is not a sanctions case.**

The undersigned respectfully request that Defendants' Amended Motion for Sanctions [DE 49] under 42 U.S.C. § 1927 be denied, *in toto*.[16]

Respectfully submitted,

| | |
|---|---|
| MARCY I. LAHART, P.A. | VENZA LAW, PLLC |
| *s/ Marcy LaHart* | *s/ Denese Venza* |
| Marcy I. LaHart, Esq. | Denese Venza, Esq. |
| 207 SE Tuscawilla Road | 931 Village Boulevard, #905-322 |
| Micanopy, FL 32667 | West Palm Beach, FL 33409 |
| (352) 545-7001 | (561) 596-6329 |
| marcy@floridaanimallawyer.com | dvenza@venzalawpllc.com |
| Florida Bar No. 0967009 | Florida Bar No. 0599220 |

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I HEREBY CERTIFY that on November 6th, 2021, I filed a true and correct copy of the foregoing PLAINTIFFS' *CORRECTED* RESPONSE IN OPPOSITION TO AMENDED MOTION FOR SANCTIONS with the Clerk of the Court using the CM/ECF System. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other manner authorized for those counsel of record or parties who are not authorized to receive Notice of Electronic Filings.

BY: *s/ Denese Venza*
Denese Venza, Esq

---

[16] Given that much of Defendants' companion Amended Motion for Attorneys' Fees and Costs [DE 48] is based upon many of the same factual inaccuracies and mischaracterizations that are debunked in the within Response, Plaintiffs' counsel submits and respectfully requests that the companion Amended Motion also be denied and expressly incorporate herein Plaintiffs' *Corrected* Response in Opposition to Defendants' Amended Motion for Attorney's Fees and Costs (filed contemporaneously with the within Response).