## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  19-14394-CIV-ROSENBERG/MAYNARD

GEORGE FRIEDEL &
KATHLEEN FRIEDEL,

      **Plaintiffs,**

v.

SUN COMMUNITIES, INC.
& PARK PLACE COMMUNITY, LLC,

      **Defendants.**

_____/

### REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon a Second Renewed Motion for Attorneys' Fees and Costs filed by Defendants, Sun Communities, Inc. ("Sun Communities") and Park Place Community, LLC ("Park Place").  DE 92.  Presiding U.S. District Judge Robin Rosenberg has referred the Motion to me for appropriate disposition.  DE 94.  Plaintiffs have filed a response in opposition. DE 96.[1]  No reply was timely filed.  Having carefully reviewed the briefing and being otherwise fully advised, I respectfully **RECOMMEND** that the Second Renewed Motion be **GRANTED IN PART** as follows.

---

[1]  Plaintiff George Friedel submitted a one-page letter, dated May 5, 2022, which asks the Court to consider his "situation and feelings as to the fairness of any decision" to assess fees.  DE 97.  This uninvited letter runs contrary to Local Rule 7.7, which prohibits represented parties such as Mr. Friedel from submitting letters or arguments directly to the Court unless invited or directed by the presiding Judge.  S.D. Fla. Local Rule 7.7.  Thus, I have limited my analysis to the arguments made and authorities cited by Mr. Friedel's counsel in the opposition briefing submitted on behalf of both Plaintiffs.

## **BACKGROUND**

**A.      *Friedel I and Friedel II***

This is Plaintiffs' second case about their dog Maggie.  In the first case, *Friedel v. Park Place Cmty., LLC* ("*Friedel I*"), 747 F. App'x 775 (11th Cir. 2018), Plaintiffs sued Park Place, the mobile home park where they lived with Maggie, for disability discrimination in violation of the Fair Housing Act ("FHA").  *Friedel I* was tried before a jury.  The jury found that Maggie was an aggressive and dangerous animal that threatened the safety of Plaintiffs' neighbors and thus concluded that Defendant Park Place acted lawfully.  Plaintiffs' motion for a new trial was denied. Plaintiffs appealed and the Eleventh Circuit affirmed in a decision dated August 29, 2018.  *Id.*

After the first affirmance, on October 16, 2019, the same two Plaintiffs filed this second case.  *Friedel v. Sun Communities, Inc. et al.* ("*Friedel II*"), 2021 WL 3732992 (11th Cir. Aug. 24, 2021).  *Friedel II* still concerns Maggie, the same Plaintiffs represented by the same counsel, and the same eviction.  *Friedel II* raised claims under the FHA and Florida law.  *Friedel II's* key difference is that Plaintiff's allegations were filed against a new Defendant— Park Place's parent company, Sun Communities.  *Id.*  In *Friedel II*, Plaintiffs were ordered to join defendant Park Place as a necessary party, after which the case was dismissed with prejudice based on a "finding that the most plausible explanation for the Plaintiffs' threatened eviction was the fact that, one day prior to the notice of eviction, the Defendants prevailed in a trial by jury—*Friedel I*" and "Plaintiffs' core allegation—that their threatened eviction was caused by the Defendants' desire to engage in disability discrimination—was an implausible allegation bereft of supporting, non-conclusory factual allegations."  DE 88 at 2-3.  Plaintiffs appealed and the Eleventh Circuit affirmed in a decision dated August 24, 2021.  *Friedel II* at *1.

### B.    *Litigation Pertaining to Attorneys' Fees and Costs*

On May 29, 2020, shortly after Judge Rosenberg's Order dismissing with prejudice *Friedel II*, Defendants filed their first motion for attorneys' fees and costs.  DE 41.  This first motion sought to recover $55,000 as "a fair estimate of Defendants' attorneys' fees" plus $2,500 for a rebuttal canine expert witness.  *Id.* at 8.  On June 19, 2020, Defendants withdrew this first motion without prejudice to allow the parties to confer on the matter of fees and costs.  DE 46.

On July 16, 2020, noting the parties' disagreement on both entitlement and amount of fees, Defendants filed a renewed motion for attorneys' fees and costs.  DE 48.  The renewed motion sought (1) $72,780.10 in attorneys' fees—comprised of fees for defense work performed by two different law firms; that is, $28,746.10 expended by Atlas Law, PLLC and ("Atlas Law") plus $44,034.00 expended by Jaffe Raitt Heuer & Weiss, P.C. ("Jaffe Law"); (2) $29.70 in unspecified "costs," and (3) $2,500.00 for a rebuttal canine expert witness.  *Id.* at 7, 9.  On July 21, 2020, Judge Rosenberg terminated this renewed motion with leave for it to be reinstated following the then pending appeal.  DE 50.

On October 22, 2021, following the Eleventh Circuit's order affirming Judge Rosenberg's Order dismissing *Friedel II* with prejudice, Defendants moved to reinstate their renewed motion for attorneys' fees and costs.  DE 53.  The motion to reinstate was granted the same day.  DE 54.

On March 21, 2022, after the reinstated motion was fully briefed, Judge Rosenberg held an evidentiary hearing which lasted four hours.  DE 82.  On March 25, 2022, Judge Rosenberg issued a comprehensive order granting Defendants' motion for attorney's fees.  DE 88.[2]  Judge Rosenberg found Defendants entitled to a reasonable fee award under both state and federal law.  DE 88 at 5,

---

[2] This Order also denied Defendants' separate motion for sanctions against Plaintiff's counsel for alleged vexatious multiplication of proceedings under 28 U.S.C. § 1927.  In declining to award sanctions, Judge Rosenberg expressly found no evidence that Plaintiffs' counsel acted in bad faith.  DE 88 at 9-10.

8 ("Chapter 723 [of the Florida Statutes] thus requires an award of fees in favor of the [prevailing party] Defendants as to Count IV" for breach of contract; in addition, under 42 U.S.C. § 3613(c)(2), "weighing all case-specific factors, the Court concludes that the Plaintiffs' case was frivolous and without factual or legal foundation. The Defendants are entitled to a reasonable attorney's fee for the Plaintiffs' discrimination counts, Counts I, II, and III.").

Importantly, Judge Rosenberg found that Defendants are entitled to attorney fees for each alleged count and expressly noted that the award is not limited to their defense to any specific count based on the "intertwined" nature of Plaintiffs' claims arising "from the same nucleus of operative facts." *Id.* at 9. ("The Court's award of attorney's fees is therefore not limited to the Defendants' fees in connection with any specific count or to any specific range of time, and instead applies to the Defendants' fees in connection with the entirety of their defense of this case."). Having determined the issue of entitlement, Judge Rosenberg ordered Defendants to "file a motion to determine the amount of a fee award" within 20 days. *Id.* at 10. Defendants timely complied by filing the instant Second Renewed Motion. DE 92.

In the Second Renewed Motion, Defendants seek attorneys' fees and costs totaling $112,744.08. DE 92 at 5. This amount consists of three categories: (1) $109,575.00 in fees for work performed by five attorneys and two paralegals ($40,595.00 in Atlas Law fees plus $68,980.00 in Jaffe Law fees); (2) $2,500.00 for a rebuttal canine expert witness; and (3) $669.08 in costs. In support, Defendants attached to their Second Renewed Motion two sets of billing invoices—one from each law firm—together with an "Expert Fee Schedule" for canine expert James Crosby. DE 92-1 (Atlas Law Client Ledger); DE 92-2 (Jaffe Law Billing Invoices); DE 92-3 (Expert Fee Schedule). Defendants also filed an attorney fee affidavit by Jaffe Law attorney

James Parks with an overview of qualifications and hourly rates sought by each attorney and paralegal at his law firm. DE 93-1.

Plaintiffs oppose the Second Renewed Motion on grounds that the fee request is unverified and fails to comport with Local Rules, thus meriting "a zero fee award." DE 96 at 5. Alternatively, Plaintiffs argue that substantial reductions should be made to the fee request based on different enumerated arguments. These arguments include that this Court lacks authority to award appellate fees, that all fees incurred by Jaffe Law should be excluded because neither attorney Parks nor any attorney at Jaffe Law properly appeared *pro hac vice*, expert witness fees are not authorized, and Defendants' invoices reveal numerous block/duplicative billing and other unreasonable entries. *Id.* at 7-17. As for costs, Plaintiffs contend that Defendants did not file the requisite bill of costs and otherwise seek impermissible categories of costs. *Id.* at 17-19.

On August 4, 2022, I issued an Order finding that the Second Renewed Motion had "material deficiencies which preclude me from properly assessing the reasonable amount of fees and costs to which Defendants are entitled." DE 98 at 1. I identified examples of the deficiencies and noted Defendants' "surprisingly nonchalant" approach taken on this post-judgment matter of fees and costs. Nonetheless, I concluded based on the prior finding that Defendants are entitled to fees that the most judicious path forward was to require the parties to renew their good faith conferral efforts. In the event such efforts proved unsuccessful, I ordered Defendants to file a supplemental notice with specified clarification in support of their claimed fees and costs. I made clear that Defendants were not permitted to include additional legal argument and that they were allowed only to "file missing invoices and to clarify, by adding more factual detail, their claimed fees and costs." *Id.* at 10.

Following unsuccessful conferral efforts, on August 19, 2022, Defendants filed a Supplemental Notice.  DE 101.  The Supplemental Notice includes annotated excel charts detailing with specificity the time spent by attorneys and paralegals on this matter; charts identifying trial versus appellate billings; cost details for E-Discovery service charges; and attorney fee affidavits by James Parks and Brian Chase.  The Supplemental Notice calculates a total requested award of $112,734.33 consisting of (1) $109,575.00 in fees for work performed by seven attorneys and two paralegals ($40,595.00 in Atlas Law fees plus $68,980.00 in Jaffe Law fees); (2) $2,500.00 for a rebuttal canine expert witness; and (3) $659.33 in costs.  *Id*. at 9.

## **DISCUSSION**

Before turning to the merits, I address two overarching matters.  First, I dispense with Plaintiffs' argument that the Second Renewed Motion should be outright denied for failure to comply with Local Rules 7.1 and 7.3.  The disputed issue of post-judgment fees and costs has been extensively litigated before and after the Eleventh Circuit's mandate in this successive case of *Friedel II*.  While the total amount sought has become progressively higher over time, Defendants have remained steady in their filing of similar motions in pursuit of their fees.  It is true that this Court's local rules require certified conferral with opposing counsel prior to filing most motions, including motions for fees.  However, such conferral is designed to grant the opposing party notice and a fair opportunity to discuss and either narrow or resolve disputed issues prior to the filing of a motion seeking Court intervention.  Here, Plaintiffs have been on full and fair notice of Defendants' post-judgment request for fees and costs.  Following a lengthy evidentiary hearing, Judge Rosenberg issued a comprehensive order concluding that Defendants are entitled to an award of fees and costs "in connection with the entirety of their defense of this case" and directed Defendants to file a motion regarding the reasonable amount of fees to be awarded.  Defendants

complied with this Order's directive and Plaintiffs have had an opportunity to respond in opposition.  While I agree with Plaintiffs' assessment that the Second Renewed Motion is deficient in certain respects, I do not agree that this lack of specifics warrants a total denial of fees.  Rather, any lack of specificity can and will be addressed by appropriate recommended adjustments.

Second, I am compelled to comment on the imprecise nature of the Second Renewed Motion.  It is hardly a model of clarity, which made it challenging to evaluate under governing standards.  For example, in seeking $40,595.00 in attorneys' fees for work performed by Atlas Law, a footnote stated that "fees for appellate work have been subtracted from the final attorneys' fee amount, but the appellate work remains listed on the attached Exhibit 'A.'"  DE 92 at 2.  No further explanation or calculations were provided to differentiate between trial and appellate work, leaving this Court with the task of deciphering such information from 11 pages of attached billing invoices attached as Exhibit A.  DE 92-1.  As another example, in separately seeking $68,980.00 in attorneys' fees for work performed by Jaffe Law, Defendants identify by name three attorneys and two paralegals who purportedly worked on this case for a combined total of 169.4 hours.  However, Defendants did not specify how many hours each timekeeper expended and again left this task up to the Court with general reference to 7 pages of billing invoices attached as Exhibit B.  DE 92-2.

Plaintiffs point out Defendants' lack of specification in their response.  Rather than file a reply to address this point by Plaintiff or otherwise clarify matters, Defendants opted to remain silent.  To help clarify apparent deficiencies, I *sua sponte* issued an Order requiring a renewed good faith conferral and granting Defendants leave to supplement their prior filings with factual information only which they have since done.

Having methodically considered all the pertinent materials on file, including the Supplemental Notice, I now turn to a determination of the appropriate amount of fees and costs to be awarded under governing standards. Defendants seek three categories of fees: (1) attorneys' fees; (2) an expert witness fee; and (3) costs. I will address each category in turn.

## I.      Reasonable Attorneys' Fees

The issue of entitlement is already decided in Defendants' favor under both Florida and federal law. DE 88. What remains to be decided is the reasonable amount of fees and costs to be awarded. Courts in the Eleventh Circuit use the familiar "lodestar" method to determine a reasonable fee award, which is calculated by multiplying the reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The fee applicant has the burden of establishing the reasonableness of the hourly rate and hours expended. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). There is a strong presumption that the lodestar figure is reasonable. *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 553-54 (2010). Courts, however, may adjust the lodestar to account for a variety of factors, such as the degree of a movant's success in the case. *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006) (citing *Hensley*, 461 U.S. at 435-36).

Importantly, courts are generally not permitted "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU*, 168 F.3d 423 at 428. Where requested attorney fees are unreasonably high, courts may either "conduct an hour-by-hour analysis" or "reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-Civ-24356-Goodman,

2013 WL 6238647, at *16-17 (S.D. Fla. Dec. 3, 2013) (reducing party's fee request with across-the-board cut based upon billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Finally, courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Instead, the essential goal for the court is to "do rough justice, not to achieve auditing perfection." *Id.*

Before turning to the lodestar analysis, two overall challenges by Plaintiffs must be addressed. First, Plaintiffs argue that this Court lack jurisdiction to award any fees for appellate work performed. DE 96 at 7-8. This is true. *See Baez v. LTD Fin. Servs., L.P.*, 2019 WL 2223773, at *5 (M.D. Fla. May 23, 2019) (collecting cases standing for proposition that 11th Cir. Rule 39-2 exclusively governs an award of appellate attorney's fees and requires, absent statute or court order, the filing of a request with the Eleventh Circuit). Defendants essentially concede this point in a footnote stating that appellate work fees "have been subtracted from the final attorneys' fee amount" even though the "appellate work remains listed on the attached" billing invoices. DE 92 at 2, n. 1. However, Defendants did not specify the total amount of appellate fees deducted as part of their original Second Renewed Motion. Nonetheless, I note that the billing invoices reflect total fees billed by both law firms in an amount higher than the fees sought which is consistent with Defendants' claim that fees for appellate work have been deducted. In addition, in their Supplemental Notice, Defendants included two charts reflecting trial versus appellate billings for both law firms. DE 101 at 6-7, Charts 2.1 and 2.2. I will thus trust but verify Defendants' claim in this regard as part of my lodestar analysis below.

Next, Plaintiffs challenge the rates and hours sought by the Jaffe Law attorneys and paralegals. Plaintiffs acknowledge that James Parks of Jaffe Law was admitted *pro hac vice* in the predecessor case of *Friedel I* but they argue that he did not secure *pro hac vice* admission in this

successor case such that all Jaffe Law fees "should be stricken and otherwise excluded." DE 96 at 9-11. I partially agree with this argument.

Defendants cite *Herfield v. Comm'r, SSA*, 839 F. App'x 322, 325 (11th Cir. 2020) in support of their request for an award of Jaffe Law fees. DE 92 at 2-3. *Herfield* involved a fee petition under the Equal Access to Justice Act (EAJA). There, a district court reduced an out-of-state attorney's hourly rate from $175 to $125 finding that it would be unjust to allow "non-admitted attorneys ... [to] enjoy the benefits and privileges of practicing before the Court" without complying with its local rules. *Id.* at 324. The district court found that the non-admitted attorney "should have sought *pro hac vice* admission" due to the importance of briefs in Social Security litigation and his predominant role in the case and that his failure to do so justified a lowered hourly rate. *Id.* The Eleventh Circuit affirmed this decision. *Id.* at 325.

Here, Defendants' sole attorney of record is Brian Chase of Atlas Law. Since this case was first filed on October 16, 2019, no Jaffe Law attorney has ever sought admission to appear *pro hac vice*. Local Rule 4(a) of the Rules Governing the Admission, Practice, Peer Review, and Discipline of Attorneys provides that "only members of the bar of this Court may appear as attorneys before this Court." Under Local Rule 4, an attorney may seek permission to appear *pro hac vice* if the attorney complies with certain requirements, including payment of a fee. James Parks successfully moved for *pro hac vice* admission in *Friedel I* and he could have easily done so again in this successive case. He inexplicably failed to do so in *Friedel II*. Neither Mr. Parks nor any of his Jaffe Law colleagues applied for *pro hac vice* status or paid any fees, yet he and his firm purportedly incurred 169.4 hours of billable time in this case for which Defendants now seek compensation. To recommend compensation in full of these hours would mean circumventing this Court's Local Rules.

On the other hand, I do not believe the appropriate result is to disallow all fees attributable to Jaffe Law. This is especially true since it can hardly be disputed that Jaffe Law played an integral part in this case given their involvement in the prior case involving the same Plaintiffs and the same circumstances. Following the approach taken in *Herfield*, I thus recommend allowing the Jaffe Law professionals to recover their fees but reducing their hourly rates. Reducing the hourly rates balances the competing interests of allowing out-of-state attorneys with relevant knowledge and experience to assist in successive litigation and respecting the Local Rules and the requirement that only attorneys who properly seek and obtain admission may litigate before this Court. Defendants seek an hourly rate of $200 to $250 for both admitted local attorney Brian Parks and his associate. I thus recommend that the hourly rates for two Jaffe Law partners with more experience be reduced to $225 and that the hourly rate for the Jaffe Law associate with less experience be reduced to $200. I further recommend that all Jaffe Law paralegal hourly rates be similarly reduced to an hourly rate of $125.

I now turn to the two prongs of the lodestar analysis – the reasonableness of the requested hourly rates and the reasonable number of hours.

### 1.    Reasonable Hourly Rate

In the Eleventh Circuit, "a reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The "relevant market" is "the place where the case is filed." *Barnes*, 168 F.3d at 437. In determining whether an hourly rate is reasonable, courts may consider the factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718-19 (5th Cir. 1974);[3] and may also rely on their own knowledge and experience of the

---

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment; (5) the customary fee; (6)

prevailing market rate. *See Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value"); *see also Johnson*, 488 F.2d at 717-19.

In the Second Renewed Motion, Defendants seek to recover fees for time expended by five attorneys and two paralegals at the following hourly rates:

- $200-$250 per hour for Atlas Law attorney Brian C. Chase, a managing partner who has practiced law for 17 years with "unique and relevant experience in the areas of landlord/tenant law, mobile home community law, fair housing act compliance, assistance animal accommodation requests, and federal jury-trial experience." DE 92 at 1-2.

- $200-$250 per hour for Atlas Law attorney Ryan J. Vatalaro, an associate attorney who has practiced law for 6 years with "relevant experience in the areas of landlord/tenant law, mobile home community law, fair housing act compliance, and assistance animal accommodation requests." *Id.* at 1-2.

- $475-$490[4] per hour for Jaffe Law attorney James Parks, an equity partner who has represented Defendant Sun Communities for over 15 years and who has practiced nationwide "commercial litigation, employment law, [and] traditional labor for over 39 years." *Id.* at 3; Parks Aff., DE 93-1 ¶¶ 3-6.

- $360-$375 per hour for Jaffe Law attorney David Adler, a partner who "specializes in commercial and general liability matters with a focus on contract disputes and business torts, the defense of injury and property damage claims, real estate litigation, and insurance coverage." DE 92 at 3; Parks Aff., DE 93-1 ¶ 7.

- $205 per hour for attorney Benjamin Low, a Jaffe Law associate with 4 years of experience who "performed legal research, assisted to prepare discovery and to collect and review documents." DE 92 at 4; Parks Aff., DE 93-1 ¶ 8.

---

whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the awards in similar cases.

[4] In the Second Renewed Motion and in Mr. Park's Attorney Fee Affidavit, Defendants identified attorney James Parks billable range as being from $475 in 2020 to $490 in 2021 and 2022. DE 92 at 2; Parks Aff., DE 93-1 ¶ 3. In the Supplemental Notice, Defendants identified a slightly different billable range from $475-$510 for Mr. Parks as part of their calculations. DE 101 at 7. This is just one example of the sorts of inconsistencies that do not instill confidence in the overall calculations provided by Defendants.

- $230 per hour for Julie A. Norton, a certified litigation/eDiscovery paralegal with over 25 years of litigation experience and nearly 3 years "as the lead eDiscovery support paralegal." DE 92 at 3; Parks Aff., DE 93-1 ¶ 10.

- $200-$215 per hour for Jody Anderson, a paralegal assigned to assist with cases involving Sun Communities for over 15 years and who has extensive trial experience. DE 92 at 4; Parks Aff., DE 93-1 ¶ 9.

Though not mentioned in the Second Renewed Motion, Defendants identify the following two additional Jaffe Law attorneys for the first time in the Supplemental Notice:  Milton Kovinsky at $450 per hour (2.7 hours) and Joshua Borson at $300 per hour (.3 hours).  Attached to the Supplemental Notice is a Renewed and Amended Attorney Fee Affidavit by Jaffe Law attorney James Parks in which he discusses the involvement of these two attorneys.  Parks Renewed Aff., DE 101-6 ¶¶ 8, 10.  However, because this is something that could have been raised in a reply which Defendants opted not to file and in fairness to Plaintiffs, I recommend that the requested fees for these two additional attorneys not be awarded.

Plaintiffs "stipulate that the rate of $200/hour for Attorney Brian Chase, a 17-year practitioner, is reasonable" but "that the rate for lesser experienced attorneys (such as Ryan Valataro), paralegals and other non-attorney workers should be reduced accordingly."  DE 96 at 12 (footnote omitted), 19-20 ("Plaintiffs concede $200/hour, as requested by Attorney Chase, is a reasonable hourly rate and respectfully submit that if any award is made, the ultimate hours should be substantially reduced and attorney hours tabulated at the $200/hour rate for those Florida-licensed attorneys of equal experience and adjusted downward accordingly for those lesser experienced").  I partially agree.

I have conscientiously considered the relevant *Johnson* factors and reviewed the time records submitted by counsel in light of the record in this case.  Following this review, and based on my own independent judgment and expertise, I find that the hourly rates of $200-$250 for Atlas

Law partner Brian Chase is reasonable based on his level of experience and his involvement as lead local counsel of record and I recommend that hourly rate range be accepted.  I recommend that the hourly rates for Atlas Law firm associate Ryan Vatalaro be set at $200 for all hours he expended to account for this associate's lesser experience.  For the reasons discussed above regarding the failure to secure *pro hac vice* admission, I recommend that the hourly rates for the two Jaffe Law partners be reduced to $225, that the hourly rate for the Jaffe Law associate be reduced to $200, and that all Jaffe Law paralegal hourly rates be reduced to $125.

### 2. **Reasonable Hours Expended**

Having determined the reasonable hourly rates, I turn next to the reasonableness of the claimed hours expended.  Attorneys must exercise "billing judgment," which means excluding hours that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 437; *Norman*, 836 F.2d at 1301 (11th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434).  Further, the Court must omit those hours that would be unreasonable to bill a client "irrespective of the skill, reputation, or experience of counsel." *Id.*

The fee applicant has the burden of providing sufficiently detailed records so that the Court can assess the time claimed for each activity.  *Norman*, 836 F.2d at 1303; *see also Hermosilla v. Coca-Cola Co.*, No. 10-21418-Civ-Moore/Torres, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action.") (citing *ACLU*, 168 F.3d at 427, 432-33).

For its part, the Court must exercise its own judgment and discretion when reviewing a fees motion and must exclude "excessive, redundant or otherwise unnecessary" hours from its calculation of hours reasonably expended. *Norman*, 836 F.2d at 1301-02; *Blue Water Marine*

*Services, Inc. v. M/Y Natalita III*, No. 08-20739-Civ-Huck/O'Sullivan, 2010 WL 1330265, at *7 (S.D. Fla. Feb. 2, 2010).

I have reviewed defense counsel's billing records and invoices.  DE 92-1; DE 92-2; DE 101-1; DE 101-2; DE 101-3; DE 101-4.  Defendants seek fees for a total of 359.5 hours[5]— comprised of 83.8 hours for Atlas Law partner Brian Chase; 109.3 hours for Atlas Law associate Ryan Vatalaro; 118.5 hours for Jaffe Law partner James Parks; .9 hours for Jaffe Law partner David Adler; 8.7 hours for Jaffe Law associate Benjamin Low, and 38.3 hours of Jaffe Law paralegal time.  Plaintiffs object to these hours on several grounds.  First, Plaintiffs argue that the hours expended by multiple Jaffe Law timekeepers are impermissibly lumped together.  Second, Plaintiffs allege that the hours billed were not reasonably expended by counsel.  For example, per Plaintiffs, the Jaffe Law records reflect large amounts of time spent on ambiguous items such as "attention to discovery" and "attention to same."  Plaintiffs assert also that reductions should be made for unacceptable block billing, duplicative billing, billing attributed to prior deficient fee request motions, redacted billing entries and wasteful hours unreasonably spent after this case was dismissed on May 19, 2022, including time spent on discovery.

Upon independent review of the billing entries, I find some adjustment necessary to account for certain billing inefficiencies.  First, defense counsel's billing records include instances of "block billing" entries, which is the practice of including multiple distinct tasks within the same time entry.  *Interim Healthcare, Inc. v. Health Care@Home, LLC*, No. 17-61378-Civ-Bloom/Valle, 2019 WL 6791465, at *6 (S.D. Fla. Nov. 27, 2019), *report adopted*, 2019 WL 6769666 (S.D. Fla. Dec. 12, 2019).  For example, a 2/6/2020 entry for attorney Parks for 1.6 hours includes the following description: "Status of disclosures, telephone conference with Brian Chase

---

[5] For the reasons discussed above regarding the two newly-added Jaffe law attorneys—Milton Kovinsky and Joshua Borson—I have not included the 3 hours claimed by these two attorneys.

and associate review law, options and objectives related to settlement, chance of success at district level, request for budget and decide how best to proceed with client." DE 92-2 at 1; *see also* 7/10/2020 entry for attorney Parks for 2.8 hours describing: "review need for new motion, review law and local rule, correspondence to local counsel re: verifications, attorney client and work product protections, telephone conference with Julie N re: petition, prepare, review and amend declaration of all Jaffe personnel for petition, review entire WIP and calculate amounts to comply with local rule, review and amend motions and brief. While I do not doubt that counsel spent this time on matters related to this case, I must be able to verify the need or relatedness of this work before I can recommend approval of payment for the time incurred. *Interim Healthcare, Inc.*, 2019 WL 6791465, at *6 (citing *Hermosilla*, 2011 WL 9364952). With block billing, it is not possible "to ascertain how much time was spent on each task." *Dial HD, Inc. v. Clearone Comm'n, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013).

Second, defense counsel billed redundant or excessive hours to perform administrative tasks and to review routine court orders and filings, including, for example a total of 2.2 hours expended by two higher-billing partners to review the complaint around the same time. DE 92-1 at 1; DE 92-2 at 1 (Atlas Law time entry dated 11/26/2019 plus Jaffe Law time entry dated 11/26/2019). Then, on 12/6/2019, another 1.4 hours was expended by an Atlas Law attorney to "Draft Notice of Appearance and Motion for Enlargement of Time re: response to Complaint; *review and analysis of complaint and named defendant*s; attention to potential affirmative defenses." DE 92-1 at 1 (emphasis added). This attorney time spent reviewing a similar complaint in a successive case is redundant and excessive. In addition, Plaintiffs cite to over 100 different time entries that they claim to be improper administrative tasks, travel time, or bulk-billing. DE 96 at 18-19. Upon review of these time entries, I agree that some of the cited entries should be

disallowed as either excessive or purely administrative. *See, e.g.* DE 92-1 at 1 (Atlas Law time entry dated 12/6/2019 to "Draft Notice of Appearance"); DE 92-2 at 1 (Jaffe Law time entry dated 3/17/2020 to "review correspondence from Brian Chase on discovery.  Attention to same.").

Lastly, defense counsel billed an excessive number of hours for work performed after Judge Rosenberg's Order dismissing and closing this case on May 19, 2020.  Multiple time entries post-dating the Order reflect several hours spent related to the series of original and amended versions of Defendants' various motions seeking an award of fees and costs. *See, e.g.,* DE 92-1 at 4-5, 9 (Atlas Law time entries dated 5/22/2020 (3.9 hours drafting and revising fees motion), 5/25/2020 (.9 hours researching recoverable expenses and costs), 5/26/2020 (3 hours drafting revisions to fee motions and researching e-discovery expenses), 6/15/2020 (.9 hours analyzing Plaintiffs' response to fees motion), 6/16/2020 (2 hours drafting amended fees motion and related research), 6/17/2020 (8.3 hours drafting "first draft of reply" to Plaintiffs' response to fees motion and "Attention to amendment of Motion for Attorneys' Fees"), 6/29/2020 (.6 hours discussing potential stipulations on fees motion), 7/14/2020 (.3 hours proposed conference regarding fees motion), 7/21/2020 (.3 hours reviewing Court order on fees motion), 10/21/2020 (.8 hours researching issues relating to filing of motion to reinstate fees motion), etc.); DE 92-2 at 5-6 (Jaffe Law time entries dated 5/20/2020 (.6 hours reviewing law on payment of fees and reviewing invoices), 6/15/2020 (.7 hours reviewing correspondence from local counsel re: response to fees motion), 6/16/2020 (1.4 hours reviewing response to fees motion), 6/17/2020 (2.8 hours reviewing need for new fees motion and related activities), etc.).  I find the overall hours spent on the issue of fees and costs unreasonable and excessive.  This is especially true considering that the Second Renewed Motion contained multiple deficiencies requiring me to issue a Court Order for further clarification after Defendants opted not to file a reply.  Additionally, I find that certain entries for "travel" by Mr.

Parks appear excessive.  DE 92-2 at 7 (Jaffe Law time entries dated 3/20/2022, 3/21/2022, and 3/27/2022 billing a total of $9,849 for 20.1 hours to "prepare for travel" to Florida, travel to and from Florida, and assist with the hearing).

      For the foregoing reasons, I conclude that a reduction to the claimed hours is warranted. Rather than conducting an hour-by-hour analysis of counsel's time entries, I recommend an across-the-board 20% reduction to the total number of hours requested per timekeeper to account for billing inefficiencies.  *See Bonom Enters., Inc.*, 2019 WL 1429513, at *4 (recommending a 35% reduction given that counsel routinely represented plaintiff in similar actions using a nearly identical complaint); *see also Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1306 (S.D. Fla. 2017) (recommending a 15% reduction for billing inefficiencies); *Rubenstein v. Fla. Bar*, No. 14-20786-Civ-Bloom/Valle, 2015 WL 1470633, at *4 (S.D. Fla. Mar. 31, 2015) (recommending a 30% reduction to counsel's hours for use of block billing)*; see also Bivins*, 548 F.3d at 1350 (noting that when the number of hours claimed is unreasonably high, a court may conduct an hour-by-hour analysis or may reduce the requested hours with an across-the-board cut); *see also Bujanowski v. Kocontes*, No. 08-CV-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009) (noting that a court has broad discretion to determine the extent to which a reduction of fees is warranted due to block billing).

      **2.    Final Recommended Lodestar Calculation**

      The following chart incorporates the above recommended adjustments to the hourly rates and number of hours sought:

| Timekeeper | Reasonable Hourly Rate | Reasonable Hours | Total Fees |
|---|---|---|---|
| Brian Chase | $200/hour | 25.9 x .80 = 20.72 | $4,144.00 |
|  | $250/hour (effective Aug. 2021) | 57.9 x .80 = 46.32 | $11,580.00 |

| Ryan Vatalaro | $200/hour | 109.3 x .80 = 87.44 | $17,488.00 |
| James Parks | $225/hour | 118.5 x .80 = 94.8 | $21,330.00 |
| David Adler | $225/hour | .9 x .80 = .72 | $162.00 |
| Benjamin Low | $200/hour | 8.7 x .80 = 6.96 | $1,392.00 |
| Paralegals Julie Norton & Jody Anderson | $125/hour | 38.3 x .80 = 30.64 | $3,830.00 |
| | **Total Lodestar Amount:** | | **$59,926.00** |

Consistent with the foregoing table with recommended adjustments, the lodestar amount representing the total fees incurred by Defendants in defending all claims brought by Plaintiffs in is $59,926.00.  I find unwarranted any further adjustment in this lodestar amount and thus recommend that Defendants be awarded attorneys' fees in this final amount.

## II.     Rebuttal Canine Expert Witness Fee

Defendants also seek to recover $2,500.00 for a payment made to canine expert witness James W. Crosby.  Defendants retained Mr. Crosby to rebut the opinion of Plaintiffs' retained canine expert witness.  In support of this requested fee, Defendants rely on a provision in the underlying lease agreement according to which Plaintiffs, as tenants, agree to pay "all costs, expenses and reasonable attorneys fees … incurred or expended" by Defendants, as landlord, in any action for possession involving a failure by Plaintiffs to voluntarily vacate the premises after termination.  DE 92 at 4-5 (citing DE 27-5 at 5).  Defendants provided Mr. Crosby's expert fee schedule requiring payment of $2,500 upon his acceptance of a case and a corresponding invoice documenting Defendants' payment of an "Expert Witness Fee" to Mr. Crosby on May 4, 2020.  DE 92-3; DE 101-3 at 12.  Plaintiffs argue that this fee is not an allowable cost under 28 U.S.C.

1920 and that the fee cannot be recovered under the lease agreement because this case was not an action to enforce that agreement.  DE 96 at 11.

Under federal law, the recovery of costs for witnesses under 28 U.S.C. § 1920 is generally limited by 28 U.S.C. § 1821, which allows a disbursement of travel expenses up to 100 miles and $40 in expert witness attendance fees.  *Crawford Fitting Co. v. J. T. Gibbons*, Inc., 482 U.S. 437, 441 (1987); 28 U.S.C. § 1821(b) ("[a] witness shall be paid an attendance fee of $40 per day for each day's attendance"); *see also J.G. v. Carnival Corp.*, No. 12-21089-Civ-Rosenbaum, 2013 WL 5446412, at *5 (S.D. Fla. Sept. 28, 2013).  The U.S. Supreme Court has held that "when a prevailing party seeks reimbursement for fees paid to its own expert witness, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co.*, 482 U.S. 437, 439 (1987).  Here, Defendants rely on a contractual provision contained in the parties' lease agreement.

Importantly, "both the Supreme Court and [the Eleventh] Circuit have long recognized that contractual provisions can circumvent these restrictions on taxable costs."  *Yellow Pages, Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1166 (11th Cir. 2017).  "[U]nder Florida law, provisions in ordinary contracts awarding attorney's fees and costs to the prevailing party are generally enforced" and "trial courts do not have the discretion to decline to enforce such provisions, even if the challenging party brings a meritorious claim in good faith." *Id.* at 1167.

Defendants seek to recover the $2,500.00 expert witness fee in accordance with a provision within the parties' lease agreement. Thus, the issue is not limited to whether the requested expert fee is recoverable under § 1920, but whether Defendants can recover this fee under the Florida contract.  In this case, they can and any exclusive reliance by Plaintiffs on § 1920 is thus misplaced. Contrary to Plaintiffs' conclusory assertion, Judge Rosenberg has already found it "beyond dispute

that the Plaintiffs' [breach of contract] claim was premised upon [the underlying lease] agreement." DE 88 at 4. Because Defendants prevailed on the breach of contract claim premised on this agreement under Florida law, I find the requested expert witness fee recoverable under the contract's terms. The cited provision allows for "all costs, expenses and reasonable attorneys fees" in any action for possession brought under the agreement. DE 27-5 at 5. This provision does not limit the recovery of any particular costs or expenses and thus plainly allows for a recovery of reasonable fees expended in litigation related to the lease agreement. Defendants' retention of an expert witness to rebut the opinions of Plaintiffs' expert witness was reasonable. I thus recommend that Defendants' request for an award of $2,500.00 in expert witness fees be granted.

## III.    Costs

Defendants seek costs totaling $659.33.[6] The categories of costs include PACER fees ($20.40); copy charges ($13.30); telephone conference charges ($16.88); and e-Discovery fees ($608.75). DE 101 at 9. Plaintiffs object on grounds that Defendants did not properly file or serve a compliant Bill of Costs and seek impermissible costs with no legal justification.

Under Federal Rule of Civil Procedure 54(d), costs other than attorney fees "should be allowed to the prevailing party" unless a federal statute, the federal rules, or court order provides otherwise. Fed. R. Civ. P. 54(d)(1). This rule creates a presumption in favor of awarding costs to the prevailing party. *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001). In awarding costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1920 absent explicit statutory or contractual authorization. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). In this case, as discussed above, the underlying lease

---

[6] Defendants originally sought $669.08 in costs "which is further documented in the time keeping records attached." Neither further details nor a clear breakdown were provided. DE 92 at 4. In their Supplemental Notice, Defendants list $663.08 in recoverable costs as detailed in a provided chart *minus* $3.75 incurred in April 2022 which Defendants agreed to waive since invoices were only originally provided through the end of March 2022. DE 101 at 8-9.

agreement provides for the recovery of all costs and expenses incurred by Defendants in enforcing their rights under the agreement.  DE 27-5 at 5.  Therefore, costs beyond those enumerated in § 1920 may be taxed.  *See Monsanto Co. v. David*, 516 F.3d 1009, 1017 (Fed. Cir. 2008) ("28 U.S.C. § 1920 does not set maximum costs around which private parties may not contract."); *MKT Reps S.A. De C V. v. Standard Chartered Bank Int'l (Americas) Ltd.*, No. 10-22963-Civ-Lenard/O'Sullivan, 2013 WL 1289261, at *2 (S.D. Fla. Mar. 28, 2013) (awarding costs beyond those enumerated in 28 U.S.C. § 1920 as provided under an agreement between the parties).

Section 1920 expressly permits the recovery of document and copying expenses.  28 U.S.C. § 1920(4) (allowing taxation of "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case.").  Litigation expenses are not recoverable under 28 U.S.C. § 1920, *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996), but may be recoverable under the parties' contract.  *See Tampa Bay Water v. HDR Eng'g, Inc.*, 2012 WL 5387830, at *21 (M.D. Fla. Nov. 2, 2012) (allowing ESI costs under the parties' contract, which provided for "all costs and expenses incurred" in the case).

The Eleventh Circuit has not yet determined if a party may recover e-discovery costs under § 1920(4).  However, the Federal Circuit, applying Eleventh Circuit case law, and other district courts in this Circuit have considered the issue and have concluded that the e-discovery costs recoverable under § 1920(4) are tightly circumscribed.  Generally, they conclude that, while the costs of digitizing paper documents and making duplicates of electronic documents are recoverable, many of the other costs associated with e-discovery (such as creating and maintaining a dynamic, indexed, and searchable database) are not recoverable. *See Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 2016 WL 7325544, at *6-7 (M.D. Fla. Aug. 31, 2016) (collecting cases).

In this case, the precise scope of § 1920(4) need not be reached because Defendants are entitled to recover their reasonable costs under the parties' contract. Even so, however, I must account for the fact that the Second Renewed Motion failed to cite to authority or otherwise adequately explain what the precise costs were, how the requested costs related to the litigation, and the reasonable nature of the costs. To simply include one sentence indicating that "Jaffe experienced $669.08 in costs, which is further documented in the time keeping records attached hereto" is plainly insufficient to demonstrate reasonableness. *See Loranger v. Stierheim*, 10 F.3d 776, 784 (11th Cir. 1994) (holding that the party seeking an award of costs or expenses bears the burden of submitting a request that enables a court to determine what costs or expenses were incurred by the party and the party's entitlement to an award of those costs or expenses); *Blitz Telecom Consulting, LLC,* 2016 WL 7325544, at *2 (M.D. Fla. Aug. 31, 2016) (failing to provide "sufficient detail or supporting documentation" for taxing costs can lead to a denial of them). Mr. Parks' supporting affidavit is similarly lacking in any clarifying detail regarding costs. DE 93-1 at 3 (summarily stating that "[e]ach item and costs are correct and was necessarily incurred in this matter" with no further detail provided).

Based upon Defendants' lack of details and citation to legal authority, and considering the case law disallowing the recovery of e-discovery costs, I recommend that the e-discovery costs be excluded under the circumstances here. Excluding this amount, the total recoverable costs reasonably incurred by Defendants is $50.58. I recommend that Defendants be awarded this reduced amount of $50.58.

## **CONCLUSION**

Based on the foregoing, I respectfully **RECOMMEND** that Defendants' Second Renewed Motion for Attorneys' Fees and Costs be **GRANTED IN PART** and that Defendants be awarded

a total of **$62,476.58** comprised of (1) $59,926.00 in attorney fees, (2) a $2,500.00 expert witness fee, and (3) $50.58 in costs.

### <u>NOTICE OF RIGHT TO OBJECT</u>

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Robin L. Rosenberg.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 3rd day of November, 2022.

SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE